**TANGLEWOOD EAST HOMEOWNERS; Jimmie D. Lee, Jr., et al., Plaintiffs-Appellees,**

**v.**

**CHARLES–THOMAS, INC., et al., Defendants,**

**First Federal Savings & Loan Association of Conroe, Defendant-Appellant.**

**No. 87–6097.**

United States Court of Appeals, Fifth Circuit.

July 28, 1988.

---

Tobi A. Tabor, Mark J. Airola, Houston, Tex., for defendant-appellant.

Craig D. Ball, Timothy F. Lee, Schmidt & Matthews, Houston, Tex., for plaintiffs-appellees.

Before POLITZ and JOHNSON, Circuit Judges, and BOYLE,[*] District Judge.

POLITZ, Circuit Judge:

In this cause we granted an interlocutory appeal under 28 U.S.C. § 1292(b), to determine whether the district court had erred in rejecting defendants' motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Finding no error in that ruling, for the reasons assigned we affirm.

### Background

For purposes of the pending motion, we accept as true the allegations of the complaint. Appellant, First Federal Savings & Loan Association of Conroe, is a lending institution. The other defendants against whom appellees have complained are residential developers, construction companies, and real estate agents and agencies. All participated in the development of the Tanglewood East Subdivision in Montgomery County, Texas. The complainants-appellees are owners of property in that subdivision. The subdivision was built on the site upon which the United Creosoting Company operated a wood-treatment facility from 1946 to 1972. During that quarter century substantial amounts of highly-toxic waste accumulated on the property. In 1973 certain of the defendants acquired the property, filled in and graded the creosote pools, and began residential development.

In 1980, Tanglewood homeowners and residents complained to Texas authorities about toxic problems and all development ceased. In 1983 the Environmental Protection Agency placed the site on its National Priorities List for cleaning under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), commonly known as the "Superfund Act," 42 U.S.C. §§ 9601, *et seq.* The cleanup, expected to cost millions of dollars, will require the demolition of six homes and the construction of bunkers to contain the hazardous materials.

The purchasers of the subdivision lots invoked CERCLA and the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901, *et seq.* and sought damages, response and cleaning costs, and injunctive relief. They also sought, but have now withdrawn, claims under the Federal Water Pollution Control Act, 33 U.S.C. § 1251.

The defendants filed a joint motion to dismiss under Fed.R.Civ.P. 12(b)(1) and

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

.12(b)(6). The district court denied the motion but certified its ruling under 28 U.S.C. § 1292(b). First Federal sought and secured our approval of an interlocutory appeal.

### Standard of Review

When a motion to dismiss challenges both the court's jurisdiction, 12(b)(1), and the existence of a federal cause of action, 12(b)(6), the *Bell v. Hood* [1] standard is applied and the motion is treated "as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981). In reviewing such a 12(b)(6) motion, we accept as true all well-pled allegations, resolving all doubts in favor of the complainants. Such a motion will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss for failure to state a claim "is viewed with disfavor, and is rarely granted." *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir.1981).

### Analysis

#### A. CERCLA

Appellant contends that it and the other defendants are not covered persons under the CERCLA, which, it submits, was intended to apply only to the person responsible for introducing the toxins, in this case, the United Creosoting Company. We do not share that crabbed a reading of this statute. Although it was enacted in the waning hours of the 96th Congress, and as the product of apparent legislative compromise is not a model of clarity, the statute has an extensive legislative history.

Under 42 U.S.C. § 9607(a) (1988), CERCLA provides a private cause of action where a release or threatened release of a hazardous substance causes response costs to be incurred. The persons covered are:

(1) the owner and operator of ... a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person ..., and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities....

#### 1. Present Owners

■ Appellant maintains that under § 9607(a)(1), the only owner and operator who discharged hazardous materials was the United Creosoting Company, who abandoned the site in 1972. We find nothing in the wording of § 9607(a) to exclude present owners of properties previously contaminated. We join our colleagues of the Second Circuit in concluding that the structure of the statute removes any doubt. Section 9607(a)(2) expressly applies to past owners and operators who contaminate their surroundings; it is therefore manifest that § 9607(a)(1) applies to current owners of adulterated sites. *See New York v. Shore Realty Corp.,* 759 F.2d 1032 (2nd Cir.1985). We hold that § 9607(a)(1) imposes strict liability on the current owners of any facility which releases or threatens to release a toxic substance.

■ "Facility" is defined in § 9601(9) to include

(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) *any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located;* but does not include any consumer product in

---

**1.** 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

consumer use or any vessel. (Emphasis added.)

The statute leaves no room for doubt; the Tanglewood East development is a covered facility.

The *Shore* court held the developer-owners liable for the cleanup costs of their facility even though no construction or development had been undertaken. A lending institution was found to be a current owner and operator under § 9607(a)(1) in *United States v. Maryland Bank & Trust Co.*, 632 F.Supp. 573 (D.Md.1986). In that case, a bank which acquired a contaminated site by foreclosure was held accountable under CERCLA. And courts addressing the issue have rejected the argument implicit in appellant's position, that liability may be imposed upon only those persons who both own and operate polluted property. *Artesian Water Co. v. Gov. of New Castle County*, 659 F.Supp. 1269 (D.Del. 1987); *United States v. Northeastern Pharm. & Chem. Co., Inc.*, 579 F.Supp. 823 (W.D.Mo.1984).

### 2. *Past Owners*

█Section 9607(a)(2) applies to persons who owned or operated a facility at the time of the disposal of the toxins. Appellant contends that the only person who qualifies under that section is United Creosoting Company. We do not so read the statute. Referring to 42 U.S.C. § 6903(3), we find "disposal" defined to include

> the discharge, deposit, injection, dumping spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

We recognize merit in appellees' argument that this definition of disposal does not limit disposal to a one-time occurrence—there may be other disposals when hazardous materials are moved, dispersed, or released during landfill excavations and fillings.

### 3. *Post Arrangers and Transporters*

█ Appellant next argues that defendants neither arranged for nor transported any hazardous material for disposal or treatment under § 9607(a)(3) and (4). This argument rests on the narrow interpretation of disposal, which we reject, and a like interpretation of "treatment" which is defined by § 6903(34) as

> any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. *Such term includes any activity* or processing *designed to change the physical form* or chemical composition *of hazardous waste* so as to render it nonhazardous. (Emphasis added.)

Appellees argue that the activity of filling and grading the creosote pools constituted treatment to render the waste non-hazardous, and that those involved in that activity are covered persons under § 9607(a)(3). Furthermore, since disposal may be merely the "placing of any ... hazardous waste into or on any land....," § 6903(3), those who move the waste about the site may fall within the terms of the provision. Under these readings of the terms "disposal" and "treatment," relevant evidence under the complaint may establish that some of the defendants were arrangers for, or transporters of, the toxic materials.

█ Finally, appellant maintains that CERCLA was intended to cover only persons actually engaged in the chemical/hazardous materials industry and those engaged in businesses which generated such materials. It vigorously contends that the legislation was not meant to impose chilling liability on the defendants' businesses: banking, real estate, construction, and development. It cites an imposing list of cases, obviously not including *New York v. Shore Realty; United States v. Maryland Bank & Trust Co.; Artesian Water Co. v. Gov. of New Castle County;* and *United*

*States v. Northeastern Pharm. & Chem. Co.* We are persuaded beyond peradventure that a determination of the specific businesses and activities covered by CERCLA is beyond the pale of a 12(b)(6) motion. That remains for another day.

In light of the foregoing, we are satisfied that the complaint may not be dismissed for failure to state a claim upon which relief under CERCLA may be granted. We are not prepared to rule as a matter of law that complainants-appellees can prove no set of facts in support of their claims which would entitle them to relief. The district court correctly denied the motion to dismiss the claims made under CERCLA.

## B. *RCRA*

The provision for suit by citizens under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) (1988), permits actions against "any past or present generator, past or present transporter, past or present owner or operator of a treatment, storage or disposal facility, who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste...." The remedies package of this legislation includes civil penalties, injunctive relief, and attorney's fees.

■ Appellant argues that since the relevant statutory definitions in § 6972 are the same as the definitions in CERCLA, the same result should obtain. We agree, although our conclusion is diametrically opposed to the resolution it suggests. As qualified for the variances, the provisions of RCRA furnish a basis for claims in the instant complaint for the same reasons that the provisions of CERCLA do.

■ Turning to the specific RCRA charges, appellant first contends that the claim is prohibited because the EPA has taken steps involving Tanglewood East. Appellant relies on § 6972(b)(2)(B)(iii) which provides that no action may be commenced under § 6972(a)(1)(B) if the administrator of the EPA "has incurred costs to initiate a Remedial Investigation and Feasibility Study under [42 U.S.C. § 9604] and is diligently proceeding with a remedial action

under the Act." The EPA apparently has completed such a study. We agree with the district court that this is a fact issue and that the complainants cannot be expected to prove, at the pleading stage, the EPA's methodology or diligence in the cleanup efforts. That remains for further proceedings.

Further, the exclusion under § 6972(b)(2)(B)(iii) does not bar claims under § 6972(a)(1)(A) against "any person ... alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this Act...." Permits, standards, and limitations are governed by §§ 6922–25. Appellant argues that no permits issued and that none were required. The applicability and relevance of the statutorily referenced permits, standards, regulations, conditions, requirements, prohibitions, or orders may not properly be resolved on the present motion.

We reach the same conclusion as we reached respecting the CERCLA claims: the instant complaint may not be dismissed for failing to state a claim under RCRA for which relief may be granted. The district court properly denied the motion to dismiss those claims.

## C. *Remedies Under CERCLA*

■ Section 9607(a)(4) provides that covered persons shall be liable for

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian Tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....

Appellant contends that under this provision appellees must demonstrate that their response costs were "necessary" and "consistent with the national contingency plan." *Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1054 (D.Ariz.1984). Appellees have alleged that their costs are consistent with the national contingency plan.

It remains for them to prove such. The issue of consistency cannot be resolved on the pleadings alone, but must await development of relevant evidence. *See Artesian Water Co. v. Gov. of New Castle County,* and authorities cited therein.

■ Appellant next maintains that some degree of governmental involvement is a necessary requisite for the application of § 9607. On this issue we agree with the conclusion reached by our colleagues of the Ninth Circuit in *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887 (9th Cir.1986), after a careful and exhaustive analysis of the statute, regulations, and legislative history. The *Wickland* panel relied in part on EPA interpretations as reflected in the preamble to the rules revising the 1972 National Contingency Plan. 50 Fed.Reg. 5862–83 (1985); 50 Fed.Reg. 47, 912–50 (1985). The preamble states that the final rule "makes it absolutely clear that no Federal [or lead agency] approval of any kind is a prerequisite to a cost recovery...." 50 Fed.Reg. 47, 934 (1985). *See also NL Industries v. Kaplan,* 792 F.2d 896 (9th Cir. 1986).

The *Wickland* court also relied on the fact that there is no procedure or mechanism by which "a private party could seek to obtain prior governmental approval of a cleanup program." 792 F.2d at 892. A subsequent panel in *Cadillac Fairview/California, Inc. v. Dow Chemical Co.,* 840 F.2d 691, 695 (9th Cir.1988), followed the same reasoning, underscoring that "there is no indication in the statute that prior approval or action by a state or local government is either necessary or desirable." We agree. We find no merit to the contention that prior governmental involvement is a prerequisite to the recouping of response costs.

■ Finally, as to the recovery of response costs under CERCLA, appellant maintains that the costs alleged by complainants—relocation costs, investigatory costs, and the cost of dikes and trenches—are not encompassed by the statute. We find no merit in this argument. First, relocation costs are specifically authorized. § 9601(24). And under the statute, response means "remove, removal, remedy and remedial action." § 9601(25). "Remove" or "removal" includes "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances...." § 9601(23). Investigatory costs fall within the ambit of this provision. *Cadillac Fairview/California, Inc. v. Dow Chemical Co.* As an analytical caboose, § 9601(24), which defines "remedy" and "remedial action," as actions "to prevent or minimize the release of hazardous substances," specifically includes the construction of dikes, trenches, or ditches among a host of other containment measures.

We find no basis for dismissing on the pleadings that part of the complaint seeking response costs under CERCLA.

## D. *Remedies Under RCRA*

■ Appellant contends that appellees have not stated a claim under the equitable relief provision of RCRA, 42 U.S.C. § 6972, arguing that those remedies cannot be based on past infractions but, rather, may be used solely to abate the current violation of a standard or limitation. The only authority cited for this proposition is *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135 (E.D.Pa.1982), which deals with remedies under the Clean Water Act. There presently are no Clean Water Act claims before us. This authority is therefore inapposite, and we do not find it persuasive as to the issues which are before us.

■ This contention is not supported by the language of the statute. Section 6972(a)(1)(B) (1988) provides that civil actions may be brought "against any person ... including any *past* or present *generator, past* or present *transporter,* or *past* or present *owner or operator* of a treatment, storage, or disposal facility, who has *contributed* or is contributing to the *past* or present *handling, storage,* treatment, transportation, or *disposal* of any solid or hazardous waste ..." (Emphasis added.) The statute empowers the court to "restrain any person who *has contributed* or who *is contributing* to the *past* or *present handling, storage,* treatment, transporta-

tion, or *disposal* of any solid or hazardous waste ... to order such person to take such action as may be necessary, or both...." (Emphasis added.) § 6972(a). We understand this language to provide a claim for injunctive relief based on either past or present conduct.

 Finally, appellant contends that the complaint should be dismissed, as it relates to injunctive relief, because complainants have failed to allege the well-recognized tetrad litany required for injunctive relief, to wit: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that irreparable injury will result if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). These requirements appertain to preliminary injunctions. Complainants seek no interim relief but ask for a permanent injunction after trial on the merits. Whether the trial court will reach and grant that relief on the merits can now only be a matter of speculation. Speculation forms no part of the disposition of the rule 12(b)(6) motion before the court.

The judgment of the district court is AFFIRMED.