976 F.2d 1338
 35 ERC 1689, 61 USLW 2226, 23 Envtl.
L. Rep. 20,020
 KAISER ALUMINUM & CHEMICAL CORPORATION, a Delaware
Corporation; James L. Ferry & Son Inc., a
California corporation, Third-Party
Defendants-Appellees,
v.
CATELLUS DEVELOPMENT CORPORATION,
Defendant-Third-Party-Plaintiff-Appellant.
 No. 92-15506.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 18, 1992.
Decided Oct. 8, 1992.
 
 Howard M. Hoffman, Sacramento, Cal., for third-party-defendants-appellees.
 Sanford Svetcov, Landels, Ripley & Diamond, San Francisco, Cal., for defendant-third-party-plaintiff-appellant.
 Appeal from the United States District Court for the Northern District of California.
 Before: KOZINSKI and THOMPSON, Circuit Judges, and REA, District Judge.*
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Catellus Development Corporation ("Catellus") appeals the dismissal of its third-party complaint against James L. Ferry & Son ("Ferry"). In that complaint, Catellus sought contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., for costs incurred in cleaning up a contaminated construction site. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.
 
 FACTS
 
 2
 Catellus's predecessor, Santa Fe Land Improvement Company, sold 346 acres of land to the City of Richmond, California ("Richmond"). Richmond hired Ferry to excavate and grade a portion of the land for a proposed housing development. While excavating the development site, Ferry spread some of the displaced soil over other parts of the property. This soil contained hazardous chemical compounds, including paint thinner, lead, asbestos, and petroleum hydrocarbons.[1]
 
 
 3
 Richmond sued Catellus to recover part of the cost of removing the contaminated soil from the property.[2] Catellus filed a third-party complaint against Ferry for contribution under 42 U.S.C. § 9613(f)(1), alleging that Ferry exacerbated the extent of the contamination by extracting the contaminated soil from the excavation site and spreading it over uncontaminated areas of the property.[3] The district court concluded that Ferry was not a person who could be held liable under CERCLA section 9607(a) and thus dismissed Catellus's complaint for failure to state a claim on which relief could be granted. See Fed.R.Civ.P. 12(b)(6). This appeal followed.
 
 STANDARD OF REVIEW
 
 4
 We review de novo a dismissal under Rule 12(b)(6) for failure to state a claim under. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533 (9th Cir.1984). We take all allegations of material facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir.1991). We will affirm a dismissal under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
 
 DISCUSSION
 
 5
 CERCLA was enacted with two primary purposes in mind. First, Congress intended to provide the federal government with the means to effectively control the spread of hazardous materials from inactive and abandoned waste disposal sites. Anspec Co., Inc. v. Johnson Controls, Inc., 922 F.2d 1240, 1247 (6th Cir.1991). Second, it intended to affix the ultimate cost of cleaning up these disposal sites to the parties responsible for the contamination. Id. We construe CERCLA liberally to achieve these goals. 3550 Stevens Creek Assoc. v. Barclays Bank of Cal., 915 F.2d 1355, 1363 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991).
 
 
 6
 To prevail in an action for contribution under CERCLA, a plaintiff must show, among other things, that the defendant falls within one of four classes of persons subject to liability under 42 U.S.C. § 9607(a). See 42 U.S.C. § 9613(f)(1) ("[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a)"); Stevens Creek, 915 F.2d at 1358 (discussing the requirements for recovery in a contribution action under CERCLA).[4] This section imposes liability on:
 
 
 7
 (1) the owner and operator of a vessel or a facility,
 
 
 8
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 
 
 9
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment ... of hazardous substances owned or possessed by such person, by any other party or entity, at any facility ... owned or operated by another ... entity and containing such hazardous substances, and
 
 
 10
 (4) any person who ... accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....
 
 
 11
 42 U.S.C. § 9607(a).
 
 
 12
 We agree with the district court that Catellus has failed to state a claim for contribution against Ferry under sections 9607(a)(1) and (3). Catellus has not alleged that Ferry currently owns or operates the development site. See United States v. Fleet Factors Corp., 901 F.2d 1550, 1554 (11th Cir.1990) (liability under section 9607(a)(1) only attaches to the present owner or operator of a facility), cert. denied, --- U.S. ----, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). Nor has it alleged that Ferry arranged for the contaminated soil to be disposed of "by any other party or entity" under 9607(a)(3). Ferry disposed of the soil itself by spreading it over the uncontaminated areas of the property. We conclude, however, that Catellus's allegations are sufficient to state a claim against Ferry under sections 9607(a)(2) and (4).
 
 A. Liability Under Section 9607(a)(2)
 
 13
 A defendant may be liable under 9607(a)(2) for the cost of cleaning up a contaminated facility if, "at the time of disposal of any hazardous substance [he] owned or operated [the] facility at which [the] hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2).[5]
 
 
 14
 Ferry was not an owner of the facility. The question is whether the allegations of Catellus's complaint are sufficient to show that Ferry was an operator of the facility and that it disposed of a hazardous substance.
 
 1. Operator
 
 15
 CERCLA defines an owner or operator as "any person owning or operating such facility...." 42 U.S.C. § 9601(20)(A). The circularity of this definition renders it useless. United States v. A & N Cleaners and Launderers, Inc., 788 F.Supp. 1317, 1331 (S.D.N.Y.1992). But see Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d 155, 156 (7th Cir.1988) ("The circularity strongly implies, however, that the statutory terms have their ordinary meanings rather than unusual or technical meanings.").
 
 
 16
 Relying on the Seventh Circuit's decision in Hines, Ferry argues that it cannot be considered an "operator" under section 9607(a)(2). In Hines, a contractor designed and built a wood treatment plant. After the plant was completed, the owner began processing wood for resale. During this process, hazardous materials were released on the site where the plant was located. The owner was forced to clean up the site, and then sued the contractor for contribution as an "operator" of the plant under section 9607(a)(2).
 
 
 17
 Although the Seventh Circuit affirmed a grant of summary judgment in favor of the contractor, Hines does not stand for the proposition that a contractor can never be liable as an operator under section 9607(a)(2). On the contrary, it is clear from the court's analysis in Hines that the contractor was not liable as an "operator" because, although he designed and built the wood treatment plant, he had no authority to control the day-to-day operation of the plant after it was built; and it was during the operation of the plant that the hazardous materials were released.
 
 
 18
 We read Hines as reiterating the well-settled rule that "operator" liability under section 9607(a)(2) only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment. See Nurad, Inc. v. Hooper & Sons Co., 966 F.2d 837, 842 (4th Cir.1992) (the authority to control the source of the contamination "is the definition of 'operator' that most courts have adopted"); CPC Int'l, Inc. v. Aerojet-General Corp., 731 F.Supp. 783, 788 (W.D.Mich.1989) ("The most commonly adopted yardstick for determining whether a party is an owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution.").
 
 
 19
 Unlike Hines, the activity which produced the contamination in the present case--the excavation and grading of the development site--occurred during, not after, the construction process. We conclude that Catellus's allegations of Ferry's operations on the property tend to show that Ferry had sufficient control over this phase of the development to be an "operator" under section 9607(a)(2).[6]
 
 2. Disposal of Hazardous Materials
 
 20
 Catellus alleges that Ferry excavated the tainted soil, moved it away from the excavation site, and spread it over uncontaminated portions of the property. These allegations are sufficient to support its claim that Ferry disposed of a hazardous substance as the term "disposed of" is used in 42 U.S.C. § 9607(a)(2).
 
 CERCLA defines "disposal" as:
 
 21
 the discharge, deposit, injection, dumping, spilling, leaking, or placing of any ... hazardous waste into or on any land ... so that such ... waste ... may enter the environment ... or be discharged into any ground waters.
 
 
 22
 See 42 U.S.C. § 9601(29) (adopting the definition set forth in section 1004 of the Solid Waste Disposal Act, 42 U.S.C. § 6903(3)). This definition has been interpreted to include the dispersal of contaminated soil during the excavation and grading of a development site. Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568 (5th Cir.1988).
 
 
 23
 In Tanglewood, developers built a housing subdivision on the site of a former wood treatment plant. During construction, they filled several creosote pools with soil and then graded the subdivision--spreading the creosote-tainted soil over the entire site. The Fifth Circuit held that by dispersing the contaminated soil throughout the subdivision the developers had disposed of it for purposes of section 9607(a). Id. at 1573.
 
 
 24
 In reaching this conclusion, the Fifth Circuit reasoned that the term "disposal" should not be limited solely to the initial introduction of hazardous substances onto property. Rather, consistent with the overall remedial purpose of CERCLA, "disposal" should be read broadly to include the subsequent "move[ment], dispers[al], or release[ ] [of such substances] during landfill excavations and fillings." Id. at 1573.[7]
 
 
 25
 We agree with the Fifth Circuit's analysis. CERCLA's definition of "disposal" expressly encompasses the "placing of any ... hazardous waste ... on any land." 42 U.S.C. § 6903(3). Congress did not limit the term to the initial introduction of hazardous material onto property. Indeed, such a crabbed interpretation would subvert Congress's goal that parties who are responsible for contaminating property be held accountable for the cost of cleaning it up.
 
 C. Liability Under Section 9607(a)(4)
 
 26
 Catellus also seeks contribution from Ferry as a transporter of hazardous substances under section 9607(a)(4). This section imposes liability on any person who:
 
 
 27
 accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....
 
 
 28
 42 U.S.C. § 9607(a)(4).
 
 
 29
 CERCLA defines "transportation" as "the movement of a hazardous substance by any mode...." 42 U.S.C. § 9601(26). Because Ferry necessarily moved the contaminated soil when it excavated and graded the property, this aspect of its conduct falls within section 9601(26)'s definition of "transportation."
 
 
 30
 The more difficult question is whether Ferry transported the soil "to ... sites selected by such person." 42 U.S.C. § 9607(a)(4) (emphasis added). Ferry contends the "on-site" dispersal of hazardous substances does not fall within the scope of section 9607(a)(4). We disagree.
 
 
 31
 CERCLA does not define the phrase "to ... sites selected by such person," nor have any cases discussed the meaning of this phrase. Although the Fifth Circuit in Tanglewood apparently assumed that the dispersal of contaminated soil over a development site satisfied the requirements of section 9607(a)(4), it failed to give any rationale for this position. Tanglewood, 849 F.2d at 1573.
 
 
 32
 We begin our analysis with the proposition that CERCLA "is to be given a broad interpretation to accomplish its remedial goals." Stevens Creek, 915 F.2d at 1363. Under section 9607(a)(4), liability attaches to transporters of hazardous substances because, like all potentially responsible parties under section 9607(a), their actions contribute to the release of contaminated material and increase the cost of remedial action. See H.R.Rep. No. 1016, 96th Cong., 2d Sess. 33 (1980), reprinted in 1980 U.S.C.C.N. 6119, 6136 (Congress intended to impose liability on those parties who "caused or contributed to a release or threatened release of hazardous waste").
 
 
 33
 Whether a transporter moves hazardous material from one parcel of land to another, or whether he simply takes the material from a contaminated area on one parcel and disposes of it on an uncontaminated area of the same parcel, he has spread contamination. There is no logical basis for a defendant's liability as a "transporter" under section 9607(a)(4) to hinge solely on whether he moves hazardous substances across a recognized property boundary.
 
 
 34
 We conclude that liability may be imposed under section 9607(a)(4) for transporting hazardous material to an uncontaminated area of property, regardless of whether the material was conveyed to a separate parcel of land. Catellus's allegations that Ferry excavated the contaminated soil from one area of the property and moved it to another are sufficient to allege potential liability predicated upon 42 U.S.C. § 9607(a)(4).
 
 CONCLUSION
 
 35
 Catellus alleged facts sufficient to state a claim against Ferry under 42 U.S.C. § 9607(a)(2), on the ground that Ferry was the operator of a facility at which it disposed of hazardous substances. The complaint also states a claim against Ferry under 42 U.S.C. § 9607(a)(4), on the ground that Ferry accepted hazardous substances for transport to sites selected by it.
 
 
 36
 We reverse the dismissal of Catellus's third-party complaint and remand this cause to the district court for further proceedings.
 
 
 37
 REVERSED and REMANDED.
 
 
 
 *
 Hon. William J. Rea, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 These chemicals were apparently deposited on the property during the 1940s when the site was used as a shipbuilding plant by the Richmond Shipbuilding Corporation, the predecessor of Kaiser Aluminum and Chemical Corporation
 
 
 [2]
 Richmond also sought contribution from the federal government because the Richmond Shipbuilding Corporation used the site to construct ships for the United States Navy. That claim is not at issue in this appeal
 
 
 [3]
 Catellus also sued Kaiser Aluminum for contribution. That claim is not at issue in this appeal
 
 
 [4]
 In addition to showing that the defendant falls within one of the four categories set forth in section 9607(a), the plaintiff must also establish that: (1) the contaminated site is a "facility" under CERCLA, (2) a "release" or "threatened release" of a "hazardous substance" occurred at the facility, and (3) the release or threatened release caused the plaintiff to incur response costs. Stevens Creek, 915 F.2d at 1358. These additional requirements are not at issue in this appeal and we do not consider them
 
 
 [5]
 The "facility" in this case is the proposed development site. See 42 U.S.C. § 9601(9) (defining "facility" to mean "any site or area where a hazardous substance has been deposited....")
 
 
 [6]
 In its pleadings, Catellus alleged that:
 At all relevant times, third party defendant Ferry was and is a California Corporation doing business in this district. On information and belief, in or about 1982 Ferry performed excavation, dredging, filling, grading and other construction and demolition (collectively, "excavation") operations on the Property. In the course of these operations, Ferry mixed substances--which, if plaintiffs' allegations are true, were contaminants--with soil and other fill materials, and then dispersed the resulting mixture throughout portions of the Property. Consequently, if plaintiffs' allegations are true, then, on information and belief, Ferry negligently and carelessly (1) released contaminants on the Property and (2) arranged for transportation, treatment and disposal of said contaminants.
 
 
 [7]
 At least one other circuit has taken the rationale in Tanglewood one step further--holding that a landowner disposes of hazardous material under section 9607(a) when he passively allows the material to migrate into the environment. See Nurad, 966 F.2d at 846. This is contrary to a published decision of a district court in this circuit. See Ecodyne Corp. v. Shah, 718 F.Supp. 1454, 1456-57 (N.D.Cal.1989). Because the present case involves the active disposal of hazardous material, we do not consider the passive migration question