LEWIS OPERATING CORP., North Preserve Holding Company, LLC, and Chino Development Corp., Plaintiffs,

v.

UNITED STATES of America and the Department of the Army, Defendants.

No. CV 05–0494 ODW (SGLx).

United States District Court, C.D. California.

July 11, 2007.

Damon P. Mamalakis, Latham & Watkins, Los Angeles, CA, David J. Hayes, Latham & Watkins, Washington, DC, Heather L. Foran, Latham and Watkins, Newark, NJ, for Plaintiffs.

Monica L. Miller, AUSA–Office of U.S. Attorney, Los Angeles, CA, Tara M. Bahn, U.S. Department of Justice, Washington, DC, for Defendants.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

OTIS D. WRIGHT II, District Judge.

## I. *INTRODUCTION*

Plaintiffs have brought this suit against the United States to recover approximately $3.2 million in costs that Plaintiffs allegedly incurred in cleaning up a World War II airplane crash site that Plaintiffs discovered on their property in Chino, California. Plaintiffs argue that the United States bears all cleanup costs under section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") on the basis that Plaintiffs qualify as "innocent landowners." Therefore, the only question at issue in Plaintiffs' Motion for Summary Judgment and Defendant United States' Cross–Motion for Partial Summary Judgment ("Motions") is whether Plaintiffs qualify as "innocent landowners" under Sections 107(b)(3)(a) and Section 101(35) of CERCLA.

The parties filed their cross-motions for (partial) summary judgment on March 23, 2007. On April 10, 2007, the parties filed oppositions, to which the respective parties each timely filed reply briefs. After review of the parties' submissions and the case file, as well as the arguments advanced by counsel at the hearing, Plain-

tiffs' Motion is DENIED and Defendant's Motion is GRANTED.

## II. *FACTUAL BACKGROUND*

Except where otherwise indicated, the following facts are undisputed.

On October 13, 1943, a United States Army Air Force aircraft crashed on land located near the southwest corner of Kimball and Grove Avenues in Chino, California ("Crash Site"). (UF, 1).[1] The Crash Site is approximately 3000 square feet in area. (UF, 2).

In 2002, an affiliate of the Plaintiffs, Lewis–STG Chelsea, LLC, purchased approximately 136–acres of property, which included the Crash Site area, in Chino, California ("the Property"). (UF, 4, 8). Plaintiffs purchased the land to develop it into a commercial and residential development. (UF, 4). In 2000, prior to purchasing the Property, Plaintiffs hired an environmental consulting company to conduct a site investigation and report on the Property. (UF, 5). The pre-purchase review of the Property did not uncover any evidence of contamination.[2] (Pl's Motion at 4).

In early December 2003, Plaintiffs' contractor, Titan Engineering, was grading portions of the Property for development by removing 10,000 cubic yards of soils from land which included the Crash Site and putting the soils into Fill Site A. (UF, 9, 10). Fill Site A is approximately 3.2 acres. (UF, 10). On December 5, 2003, the contractors reported finding .50 caliber machine gun rounds in Fill Site A. (UF, 11). After the discovery of the munitions, operations were immediately halted and the area was cordoned off. (UF, 12). Plaintiff Lewis contacted local authorities, which caused the City of Ontario Fire Department Bomb Squad to inspect the premises and remove all visible ordnance from the Crash Site. (UF, 15). Plaintiffs then sought proposals from private contractors to clear munitions from Fill Site A. (UF, 16).

On December 10, 2003, contractor Titan resumed excavations of the Crash Site. (UF, 22). The soils from the December 10th excavation were placed in an area referred to as Fill Site B. (UF, 23). Fill Site B is a 2.9–acre parcel, which contained an estimated 38,000 cubic yards of fill. (UF, 23). Throughout December other munitions were unearthed in Fill Site A. (UF, 25).

In January 2004, Plaintiffs contacted the United States Army Corps of Engineers ("Corps") for help cleaning up the Crash Site. (UF, 27). After assessing Plaintiffs' possible eligibility for the Formerly Used Defense Sites program, the Corps ultimately decided not to conduct the removal of any of the remnants of the airplane crash from the Property. (UF, 29, 30). On January 23, 2004, Plaintiffs met with the Department of Toxic Substances Control, School Property Evaluation and Cleanup Division ("DTSC") to discuss an investigation and cleanup of munitions. (UF, 31). In addition to the Crash Site, and Fill Sites A and B, DTSC identified Fill Site C as an area of potential concern insofar as Fill Site C, a 10–acre parcel, included soils taken from the haul road that was used prior to the Titan's unearthing munitions from Fill Site A on December 5, 2003. (UF, 33).

On April 29, 2007, DTSC sent a letter to Plaintiffs approving a work plan to remediate approximately 10,000 cubic yards of soil in Fill Site A that originated from the Crash Site. (UF, 37). The approval letter

---

1. The Court cites to the Joint Undisputed Facts ("UF") submitted by the parties on March 23, 2007.

2. This seemingly material fact was left out of the Joint Undisputed Facts supplement to the Cross–Motions for Summary Judgment.

did not address the removal of soils from Fill Sites B and C, or from the original Crash Site. (UF, 38). Eventually, DTSC investigated and removed all ordnance and explosives ("OE") with regard to Fill Sites A, B, and C and the Crash Site. In total, 46,442 tons of soil were processed through a soil screening plant and 163 OE and suspect-OE were recovered. (UF, 41–43). On December 29, 2004, the removal process was completed. (UF, 44).

### III. DISCUSSION

#### A. Legal Standard: Summary Judgment

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323–34, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir.2000).

Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party— over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001) (The nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor.).

#### B. Analysis

■ "CERCLA sets forth a comprehensive scheme for the cleanup of hazardous waste sites, and imposes liability for cleanup costs on the parties responsible for the release or potential release of hazardous substances into the environment." *Pakootas v. Teck Cominco Metals, Ltd.,* 452 F.3d 1066, 1072 (9th Cir.2006); *see also Gen. Elec. Co. v. Litton Indus. Automation Sys., Inc.,* 920 F.2d 1415, 1422 (8th Cir. 1990) (stating that "two ... main purposes of CERCLA" are "prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party").

CERCLA Section 107(a)(4)(A) authorizes the United States, as well as certain other entities and persons, to seek recovery of appropriate response costs from four categories of "covered persons," referred to as "potentially responsible parties" or "PRPs." *See Carson Harbor Village, Ltd. v. Unocal Corp.,* 270 F.3d 863, 871 (9th Cir.2001). The four categories of PRPs are: (1) owners and operators of facilities at which hazardous substances are located; (2) past owners and operators of such facilities at the time hazardous substances were disposed of; (3) persons who arranged for disposal or treatment of hazardous substances; and (4) certain

transporters of hazardous substances to the site. 42 U.S.C. § 9607(a)(1)-(4).

Even if a party is considered an otherwise liable PRP, that party may assert a variety of defenses to liability. Most relevant here is the so-called "innocent landowner" defense under Section 107(b) of CERCLA. In order to prevail on an "innocent landowner" defense, the party seeking to establish such defense must prove by a preponderance of the evidence: "(1) that another party was the 'sole cause' of the *release* of hazardous substances and the damages caused thereby; (2) that the other, responsible party did not cause the release in connection with a contractual, employment, or agency relationship with the [plaintiffs]; and (3) that the [plaintiffs] exercised due care and guarded against the foreseeable acts or omissions of the responsible party." *Westfarm Assocs. Ltd. Partnership v. Washington Suburban Sanitary Com'n*, 66 F.3d 669, 682 (4th Cir.1995) (citing 42 U.S.C. § 9607(b)(3)) (emphasis added).

Here, there is no dispute that Plaintiffs should be considered PRPs unless they can establish that they meet the requirements for the "innocent landowner" defense. If so, they are immune from liability. Therefore, the only question here is whether Plaintiffs qualify as "innocent landowners."

At first glance it would appear that Plaintiffs easily meet the definition of innocent landowners. Plaintiffs properly inspected the property before they purchased it. And, it appears that Plaintiffs exercised due care in cleaning up the contaminated land. Therefore, Plaintiffs would be considered innocent landowners *if* the only clean-up area at issue was the Crash Site. However, as the United States points out, Plaintiffs spread the contaminated soil from the Crash Site to Fill Sites A, B, and C. Thus, the original 3000 square feet Crash Site area was spread over 16.1

acres of land. (UF, 2, 10, 23, 33). It is not a stretch to say that sifting through 16.1 acres compared to 3000 square feet of soil would greatly increase the time, effort, and expense involved in the clean-up process. Therefore, the analysis here turns on the application of the first element of the "innocent landowner" defense.

██ Plaintiff must establish that the United States was the "sole cause" of the "release" of hazardous substances and the damages caused thereby. 42 U.S.C. § 9607(b)(3) When interpreting a statute, "[o]ur task is to construe what Congress has enacted." *Duncan v. Walker*, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). "[W]e look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir.1996).

"The term 'release' means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." *Carson Harbor*, 270 F.3d at 878 (quoting 42 U.S.C. § 9601(22)). "We can conclude that 'release' is broader than 'disposal,' because the definition of 'release' includes 'disposing.'" *Id.* The Ninth Circuit has held that "the movement of contamination that ... result[s] from human conduct is a 'disposal.'" *Id.* at 877 (citing *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1342 (9th Cir.1992)).

The facts in *Kaiser Aluminum* are very similar to the instant case. However, the Ninth Circuit in *Kaiser Aluminum* focused on defining the term "disposal" as it relates to Section 107(a) under CERCLA. Thus, *Kaiser Aluminum* is a PRP case that examined whether a contractor was a PRP for purposes of contribution (*i.e.*, it was not an "innocent landowner" case).

Nonetheless, it can be used here to guide the Court by connecting the dots with *Carson Harbor*, which is an "innocent landowner" case.

In *Kaiser Aluminum*, the Ninth Circuit noted that the definition of " 'disposal' has been interpreted to include the dispersal of contaminated soil during the excavation and grading of a development site." *Kaiser Aluminum*, 976 F.2d at 1342 (citing *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir.1988)). Further, the court in *Kaiser Aluminum* was guided by the Fifth Circuit's *Tanglewood* decision. "In *Tanglewood*, developers built a housing subdivision on the site of a former wood treatment plant." *Id.* During construction, "they filled several creosote pools with soil and then graded the subdivision—spreading the creosote-tainted soil over the entire site. The Fifth Circuit held that by dispersing the contaminated soil throughout the subdivision, the developers had disposed of it for purposes of section 9607(a)." *Id.*

The Ninth Circuit agreed with the Fifth Circuit's reasoning "that the term 'disposal' *should not be limited solely to the initial introduction of hazardous substances onto property.* Rather, consistent with the overall remedial purpose of CERCLA, 'disposal' should be read broadly to include the *subsequent* 'move[ment], dispers[al], or release[ ] [of such substances] *during landfill excavations and fillings.* '" *Id.* (emphasis added).

The court further noted that "CERCLA's definition of 'disposal' expressly encompasses the 'placing of any ... hazardous waste ... on any land.' " *Id.* (citing 42 U.S.C. § 6903(3)). "Congress did not limit the term to the initial introduction of hazardous material onto property. Indeed, such a crabbed interpretation would subvert Congress's goal that parties who are responsible for contaminating property be held accountable for the cost of cleaning it up." *Id.* at 1342–43.

Now, it is important to read *Kaiser Aluminum* in connection with the Ninth Circuit's holding in *Carson Harbor*. In *Carson Harbor*, the Ninth Circuit examined whether a previous land owner could be considered a PRP when the previous owner did not actively participate in the disposal of pollutants, but rather, the pollutants only passively migrated throughout the soil while the previous owner owned the land. The court noted, "whether the definition [of 'disposal'] includes passive soil migration is an issue of first impression in this circuit." *Carson Harbor*, 270 F.3d at 875. Ultimately, the court in *Carson Harbor* held that a previous owner cannot become a PRP simply because there is passive soil migration on the land. *Id.* at 883–84. Otherwise, as the court noted, there would never be a use for the "innocent landowner" defense. *Id.*

■ However, and more important to the instant case, the court in *Carson Harbor* clearly distinguished passive movement of contamination from the active movement that was addressed in *Kaiser Aluminum*. The court noted that the term "release," as it is used in the "innocent landowner" statute, includes the term "disposal." *Id.* at 882. Then, the court noted that the term "disposal" includes moving soil throughout a development site and thus spreading the contaminated soil, as in *Kaiser Aluminum*. *Id.* at 876. Therefore, if a landowner actively spreads contaminated soil from one area of a development site to another, as was done here, that landowner has "released" contaminants onto the land.

■ At oral argument, Plaintiffs' counsel alleged that the test for the "innocent landowner" defense should include a "knowledge" or "discovery" element (*i.e.* if a party has not discovered that it is mov-

ing contaminated soil, that party is still an innocent landowner). However, knowledge was not part of the test in either *Carson Harbor* or *Kaiser Aluminum.* *Carson Harbor* distinguished passive from active movement, which we have also done here. Plaintiffs in the instant case actively moved contaminated soil from the Crash Site to Fill Sites A, B, and C. And, *Kaiser Aluminum* found a contractor liable even when that contractor had no knowledge that the soil he was moving was contaminated. Further, the "discovery test" proposed by Plaintiffs goes against the strict liability nature of CERCLA. "CERCLA generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed." *Idaho v. Hanna Mining Co.,* 882 F.2d 392, 394 (9th Cir.1989) (citing 42 U.S.C. § 9607(a)).

In sum, Defendants here were not the "sole cause" of the "release" of hazardous substances, because Plaintiffs **actively** spread contaminated soil from a 3000 square feet Crash Site to more than 16 acres. Therefore, because Plaintiffs have failed to meet the first prong of the "innocent landowner" defense, they will be considered PRPs for purposes of contribution. The Court's holding today does not determine the extent of Plaintiffs' liability, or even if Plaintiffs will be liable at all. The Court's finding simply means that further factual inquiry must be made to determine if Plaintiffs should contribute to the cleanup costs now that it is clear that the "innocent landowner" defense does not apply.

### IV. CONCLUSION

For the reasons discussed above, the Court finds that the United States did not "solely" cause the "release" of the hazardous materials on Plaintiffs' property. Thus, Plaintiffs do not fall within the "innocent landowner" defense set forth in Section 107(b) of CERCLA. Accordingly, Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Cross–Motion for Partial Summary Judgment is GRANTED.