08-1731-cv
AMW Materials Testing, Inc. v. Town of Babylon

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: August 7, 2009          Decided: October 19, 2009)

Docket No. 08-1731-cv

AMW MATERIALS TESTING, INC.,
ANTHONY ANTONIOU,

*Plaintiffs-Counter-*
*Defendants-Appellants,*

— v.—

TOWN OF BABYLON,

*Defendant-Counter-Claimant-*
*Cross-Defendant-Appellee,*

NORTH AMITYVILLE FIRE COMPANY, INC.,

*Defendants-Counter-Claimants-*
*Appellees*.

Before:

MCLAUGHLIN, POOLER, and RAGGI,

*Circuit Judges.*

_____

In a case involving a fire at a commercial building during which hazardous materials

were released into the environment, plaintiff owners sued the local entities that responded

to the emergency in the United States District Court for the Eastern District of New York

(Arthur D. Spatt, *Judge*) under the Comprehensive Environmental Response, Compensation,

and Liability Act (CERCLA), 42 U.S.C. § 9601 <u>et seq.</u>, New York tort law, and New York Navigation Law § 181(1), to recover cleanup costs. Plaintiffs now appeal a judgment in favor of defendants entered after trial, arguing that defendants qualify as a matter of law under 42 U.S.C. § 9607(a) as "operators" of the facility from which hazardous materials were released, and that emergency response actions pursuant to 42 U.S.C. § 9607(d)(2) cannot constitute an affirmative defense to § 9607(a) liability. Both arguments are unpersuasive.

AFFIRMED.

---

JOAN M. FERRETTI (Robert M. Lustberg, *on the brief*), Lustberg & Ferretti, Glens Falls, New York, *for Appellants*.

RICHARD F. RICCI (Priya Rebecca Masilmani, *on the brief*), Lowenstein Sandler, Roseland, New Jersey; STEVEN C. SHAHAN, Tadeo & Shahan, Syracuse, New York, *for Appellees*.

---

REENA RAGGI, *Circuit Judge*:

Plaintiffs AMW Materials Testing, Inc., and its owner Anthony Antoniou appeal a judgment entered in favor of defendants, the Town of Babylon and the North Amityville Fire Company, after a jury trial in the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*). The case arises from defendants' emergency response to a 2000 fire that destroyed the AMW building in North Amityville, in the course of which hazardous materials stored in the building were released into the environment. Plaintiffs

2

sued defendants under federal law, specifically, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., as well as under New York tort law and New York Navigation Law § 181(1), to recover costs incurred in responding to this release.

In appealing the judgment entered on March 24, 2008, in favor of defendants on the CERCLA claims, plaintiffs raise various challenges falling into two general categories. First, plaintiffs submit that defendants were "operators" of the AMW facility at the time the hazardous materials at issue were released and, therefore, are liable for cleanup costs under 42 U.S.C. § 9607(a). Second, plaintiffs assert that emergency response actions pursuant to 42 U.S.C. § 9607(d)(2) cannot constitute an affirmative defense to § 9607(a) liability. Our ability to address these arguments is somewhat complicated by the fact that the district court's inquiries to the jury and its own findings of fact and conclusions of law focused primarily on the affirmative defense, with no findings made on the operator question. Plaintiffs nevertheless submit that the trial record permits the operator question to be answered in their favor as a matter of law. We are not persuaded. Moreover, we reject plaintiffs' argument that § 9607(d)(2) cannot afford an affirmative defense to their § 9607(a) claims. We further reject plaintiffs' various challenges to the judgment in favor of defendants on their state law claims.

Accordingly, we affirm the judgment in favor of defendants.

3

I.    **Background**

We begin with a brief summary of the facts, providing further details of the trial evidence as necessary in our discussion of plaintiffs' particular challenges on appeal.

A.    The Fire

In 2000, plaintiffs owned an industrial facility in North Amityville, New York, where they engaged in metal finishing for the aerospace industry.  Pursuant to permits, plaintiffs stored various "hazardous substances," see 42 U.S.C. §§ 9601(14), 9602(a), in the AMW facility for use in their work.

Sometime before 3:00 p.m. on October 9, 2000, a fire broke out in plaintiffs' facility, which Antoniou and an AMW employee unsuccessfully attempted to extinguish. Meanwhile, individual callers and an automatic alarm system in the AMW facility alerted defendant North Amityville Fire Company ("Fire Company") – a volunteer association – to the fire. Within minutes, members of the Fire Company responded to the scene.

Fire Company Chief Willie Tutt initially ordered firefighters into the AMW building to fight the blaze from within.  Almost immediately, the firefighters were compelled to withdraw by the extremely high heat and thick smoke that they encountered. Soon after their exit, the front wall and roof of the building collapsed.  As a result, the Fire Company decided to employ defensive firefighting techniques, using a deck gun and a tower ladder to suppress the fire.  Chief Tutt testified that, at the time, he understood that the building was likely lost. After firefighters thus extinguished the accessible portions of the fire, Chief Tutt instituted

4

an "overhaul" phase in which payloaders removed portions of the collapsed roof so that firefighters could gain access to the fire that continued to smolder underneath.

As a result of the fire and the subsequent building collapse, hazardous substances stored in plaintiffs' facility were released into the surrounding environment. During and after the fire, plaintiffs took various steps to contain, remove, and remediate these hazardous substances.

B.     Plaintiffs' Lawsuit and the Initial Award of Summary Judgment

On June 22, 2001, plaintiffs commenced this action against the Fire Company and the Town of Babylon,[1] seeking compensation under federal and state law for costs incurred in dealing with the released hazardous substances. On December 20, 2004, the district court granted summary judgment in favor of defendants on all claims. On appeal, a panel of this court summarily affirmed the award on plaintiffs' CERCLA contribution claims, see 42 U.S.C. § 9613, but reversed it on the CERCLA restitution claims, see id. § 9607(a), as well as the state negligence and Navigation Law claims, see N.Y. Nav. Law § 181(1). See AMW Materials Testing, Inc. v. Town of Babylon, 187 F. App'x 24 (2d Cir. 2006).

C.     The Trials

On remand, the first trial of plaintiffs' claims ended in a hung jury and mistrial. At a retrial in 2007, the district court used a verdict sheet to pose certain questions to the jury relating to plaintiffs' claims. As to plaintiffs' state law claims, the jury answered all

---

[1] North Amityville, a hamlet, is part of the Town of Babylon in Suffolk County.

questions in favor of defendants. As to plaintiffs' CERCLA claims, the jury's responses were more ambiguous.[2] Having previously determined that plaintiffs had no right to a jury trial on their CERCLA restitution claims, the district court treated the jury's responses on those claims as only advisory. See Fed. R. Civ. P. 39(c)(1). Making its own findings of fact and conclusions of law with respect to CERCLA, and following the jury's findings with respect to the state law claims, the district court entered a final judgment in favor of both defendants on all plaintiffs' claims. See Fed. R. Civ. P. 52(a)(1).

Plaintiffs filed this timely appeal.

## II.   **Discussion**

### A.   The CERCLA Claims

#### 1.   Statutory Background

Preliminary to discussing plaintiffs' particular challenges to the judgment entered in favor of defendants on the CERCLA claims, we discuss the relevant statutory scheme. Congress enacted CERCLA in 1980 "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the

---

[2] For example, in response to the question, "Did the defendants prove that the defendant North Amityville Fire Company was taking action 'in response to an emergency created by the release or threatened release of a hazardous substance'?" the jury answered, "No." Verdict sheet at 1. At the same time, however, in response to the question, "Did the plaintiffs prove that some time during its presence at the scene of the fire, the defendant North Amityville Fire Company was **not** taking action 'in response to an emergency created by the release or threatened release of a hazardous substance'?" the jury answered, "No." Id. Asked the same questions about the Town of Babylon, the jury answered the first question, "Yes," and the second question, "No." Id. at 3-4.

6

contamination." Burlington N. & Santa Fe Ry. Co. v. United States, 129 S. Ct. 1870, 1874 (2009) (internal quotation marks omitted). The statute seeks to accomplish this goal through three cost-shifting provisions: CERCLA § 107(a), 42 U.S.C. § 9607(a), which permits recovery of cleanup and prevention costs; id. § 113(f)(1), 42 U.S.C. § 9613(f)(1), which creates a right of contribution for parties who have been compelled to clean up a site by a court or administrative body; and id. § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), which creates a similar right of contribution for parties that have resolved the issue of liability to the United States by a settlement agreement. See generally Consolidated Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90, 94 (2d Cir. 2005) (discussing statutory framework).[3] This court having affirmed the award of summary judgment in favor of defendants on plaintiffs' contribution claim, see AMW Materials Testing, Inc. v. Town of Babylon, 187 F. App'x at 26, only CERCLA § 107(a), 42 U.S.C. § 9607(a), providing for restitution, is relevant to this appeal.

a.      Section 9607(a) Liability

Title 42 U.S.C. § 9607(a) defines four classes of "covered persons" subject to liability for "response costs," i.e., the costs "of cleaning up and preventing future contamination at a site" onto which hazardous materials have been released. Consolidated Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d at 94-95. For purposes of this appeal, we focus on

_____

[3] For the remainder of our discussion, we refer to the relevant CERCLA provisions in their codified form.

7

§ 9607(a)(2), the provision relied on by plaintiffs in suing defendants for restitution. Section 9607(a)(2) states that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" is a "covered person" for purposes of CERCLA. Although plaintiffs were undoubtedly the owners of the AMW facility from which the hazardous materials at issue in this case were released, they submit that defendants are liable under § 9607(a)(2) as the effective operators of the facility throughout the time they fought the fire at the site.

b.      Section 9607 Defense Provisions

The introductory language of § 9607(a) states that "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section," persons "covered" under the subsection are strictly liable. Subsection (b), which is not at issue in this case, affords an affirmative defense to a covered person who can demonstrate that the damages attributable to the release or threatened release of a hazardous substance were caused "solely" by an act of God, war, or a third party unrelated to the covered person. 42 U.S.C. § 9607(b).

In a 1986 amendment to CERCLA codified at 42 U.S.C. § 9607(d), Congress provided a further defense that is here at issue. Specifically, § 9607(d)(2) states as follows:

No State or local government shall be liable under this subchapter[4] for costs

---

[4] The relevant subchapter, Subchapter I, is entitled "Hazardous Substances Releases, Liability, Compensation" and spans those sections of CERCLA codified at 42 U.S.C. §§ 9601-9630.

8

or damages as a result of actions taken in response to an emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by another person. This paragraph shall not preclude liability for costs or damages as a result of gross negligence or intentional misconduct by the State or local government. For the purpose of the preceding sentence, reckless, willful, or wanton misconduct shall constitute gross negligence.

This subsection is followed by a "Savings provision," which states that § 9607(d) "shall not alter the liability of any person covered by the provisions of paragraph (1), (2), (3), or (4) of subsection (a) of this section with respect to the release or threatened release concerned." Id. § 9602(d)(3).

> 2. Plaintiffs' Insistence that Defendants Are Liable as "Operators" Under § 9607(a)

Plaintiffs argue that the district court erred in submitting a verdict sheet to the jury that failed to ask first whether, pursuant to 42 U.S.C. § 9607(a), defendants were "operators" of the AMW facility at the time of the hazardous materials discharge at issue. They assert that the trial record compels an affirmative answer to this question as a matter of law. Plaintiffs further contend that any emergency response by defendants pursuant to § 9607(d)(2) cannot serve as an affirmative defense to § 9607(a) liability. Neither argument is convincing.

> a. Defendants' Status as "Operators" of the AMW Facility Was Not Established as a Matter of Law

On the initial appeal of summary judgment in this case, this court identified "a dispute of fact over whether the Town and Fire Company were 'operator[s]' while they were controlling the premises to extinguish the fire." AMW Materials Testing v. Town of Babylon, et al., 187 F. App'x at 27. Noting that in United States v. BestFoods, 524 U.S. 51

9

(1998), the Supreme Court interpreted the term operator broadly as "simply someone who directs the workings of, manages, or conducts the affairs of a facility," id. at 66, this court remanded the case for trial of this issue. AMW Materials Testing v. Town of Babylon, et al., 187 F. App'x at 27-28.

At trial, the district court structured the verdict sheet so that the jury first answered questions relating to the emergency response defense in § 9607(d)(2). As a result of the jury's answers, the question of defendants' status as operators was never addressed. Plaintiffs submit that the trial record – more fully developed than the record on summary judgment – is sufficiently clear to permit the question to be answered in their favor as a matter of law. We cannot agree.

To explain, we return to the holding in BestFoods. In that case, the Supreme Court dismissed as "tautolog[ical]" and "useless[]" CERCLA's own definition of "owner or operator" as "'any person owning or operating such facility.'" Id. at 56, 66 (quoting 42 U.S.C. § 9601(20)(A)(ii)). Construing the phrase for itself, the Court concluded that it reaches broadly to encompass "the facility's owner, the owner's parent corporation or business partner, or even a saboteur who sneaks into the facility at night to discharge its poisons out of malice." Id. at 65. With specific reference to the word "operator," the Court observed that it means "simply someone who directs the workings of, manages, or conducts the affairs of a facility." Id. at 66. Plaintiffs submit that this definition necessarily encompasses defendants because they had "exclusive control" over the AMW facility at the

10

time of the fire. Appellants' Br. at 49. Specifically, defendants "controlled and operated the payloaders, deck guns and tower ladders" used to fight the fire. Id.

Plaintiffs' argument, however, overlooks the very next sentence in the BestFoods opinion: "To sharpen the definition for purposes of CERCLA's concern with environmental contamination," the Supreme Court ruled that "an operator must manage, direct, or conduct operations specifically related to pollution, that is operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Id. at 66-67. This "sharpen[ed]" construction, while sufficiently broad to extend beyond titular owners and day-to-day operators, nevertheless implies a level of control over the hazardous substances at issue that is simply not manifested by the evidence in this case. While defendants controlled firefighting operations at the AMW site, the hazardous materials at issue were stored in a burning building to which firefighters could not gain safe entry. These particular circumstances would not permit a conclusion as a matter of law that defendants had sufficient control over the hazardous materials to "manage, direct, or conduct operations specifically related to pollution." Id. at 66.

Nor is a different conclusion warranted by the fact that defendants elected to use payloaders to remove debris from the building site. Plaintiffs claim that the evidence showed that hazardous materials were discharged in the removal process. We note that, in fact, plaintiffs' witnesses testified only to such a possibility. Considerable evidence indicated that any discharge of hazardous materials occurred prior to the removal operations. In any event,

11

plaintiffs adduced no evidence demonstrating that defendants' removal actions were "specifically related to pollution" or to the disposal of hazardous materials. Id. at 66-67 (emphasis added). Rather, uncontroverted evidence showed that the payloader operations were specifically related to putting out a fire, a task that incidentally required the removal of debris from the building collapse. On these facts, we reject plaintiffs' argument that defendants were operators of the AMW facility as a matter of law. Indeed, we are doubtful that any reasonable jury could have made an operator finding on the trial record.[5]

### b. Section 9607(d)(2) Provides a Defense to § 9607(a) Claims

Plaintiffs assert that the district court erred in construing § 9607(d)(2) as a defense to § 9607(a) liability. In any event, they submit that the verdict sheet on this point is flawed, and that the errors are not cured by the district court's independent findings of fact because they were entitled to a jury trial on this issue.

### (1) Construing the Statutory Scheme

Plaintiffs submit that § 9607(d)(2) cannot be construed as a defense to § 9607(a) liability without depriving the § 9607(d)(3) savings provision of meaning in contravention of well-settled canons of statutory interpretation. See, e.g., Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 166 (2004) (noting that Court is "loath" to "render part of [a] statute entirely superfluous"). Because this objection was preserved in the district court, our

---

[5] Because defendants did not make this argument on appeal, we need not decide the question, particularly as we identify other grounds to affirm the judgment in their favor on the CERCLA claims in the next section of this opinion.

12

review is de novo.  See Boyce v. Soundview Tech. Group, Inc., 464 F.3d 376, 390 (2d Cir. 2006) ("When a party challenges a court's jury charge, this Court reviews the jury instructions de novo and as a whole.").  On such review, we conclude that plaintiffs' challenge is without merit.

We begin, as we must, with the plain text of the statute.  See New York ex rel. N.Y. State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs. Admin. for Children & Families, 556 F.3d 90, 97 (2d Cir. 2009).  The first sentence of § 9607(d)(2) commands that "[n]o State or local government shall be liable under this subchapter" if it is responding to the type of emergency defined in the provision, unless the alleged damages are the result of gross negligence or intentional misconduct.  42 U.S.C. § 9607(d)(2).  On its face, the scope of this provision is unambiguous and unequivocal and permits no limitations beyond those provided in the text.

Plaintiffs contend that § 9607(d)(3) provides such a textual limitation.  They submit that the statement that subsection (d) "shall not alter the liability of any person covered by the provisions of paragraph (1), (2), (3), or (4) of subsection (a) of this section with respect to the release or threatened release concerned" precludes any application of the § 9607(d)(2) defense to persons covered by § 9607(a).  Defendants counter that § 9607(d)(3) is properly construed to preserve § 9607(a) liability for states and local governments except in the emergency circumstances referenced in § 9607(d)(2).  CERCLA's structure supports defendants' reading of § 9607(d)(3) and precludes plaintiffs'.  See generally Conroy v.

13

Aniskoff, 507 U.S. 511, 515 (1993) ("[T]he meaning of statutory language, plain or not, depends on context." (internal quotation marks omitted)).

Three provisions of CERCLA establish cost-shifting liability: §§ 9607(a), 9613(f)(1), and 9613(f)(3). See supra at **[7]**. Clearly, § 9607(d)(2) must preclude state and municipal liability under at least one of these provisions. A contrary interpretation would impermissibly deprive § 9607(d)(2) of all meaning. See Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. at 166. At oral argument, plaintiffs suggested that, to give proper effect to § 9607(d)(3), § 9607(d)(2) should be construed to provide an affirmative defense to liability under either § 9613(f)(1) or (f)(3), but not to liability under § 9607(a). The argument makes little sense. First, § 9607(d)(2) refers to "costs or damages." Significantly, the term "damages" is used only in § 9607(a), and not in § 9613(f)(1) or § 9613(f)(3).[6] The

_____

[6] Section 9607 provides in relevant part as follows:

(a)     Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
. . .

(2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . . shall be liable for –
. . .

(C)     damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a

14

release.

42 U.S.C. § 9607(a) (emphasis added).

Section 9613 provides in relevant part as follows:

(f)    Contribution

    (1)    Contribution

        Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

    . . .

    (3)    Persons not party to settlement

        (A)    If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

        (B)    A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a

15

use of the term thus appears to signal Congress's intent to link the defense provided in subparagraph (d)(2) to the injuries described in subparagraph (a). Second, all liability for response actions under CERCLA originates with § 9607(a). Section 9613(f)(1) provides in relevant part that a "person may seek contribution from any person who is <u>liable or potentially liable under section 9607(a) of this title</u>." 42 U.S.C. § 9613(f)(1) (emphasis added). Section 9613(f)(3) then provides that a party that has resolved its liability to the United States for some or all of the costs of a "response action" may seek contribution, presumably under § 9613(f)(1), from a person who is not a party to the settlement. <u>Id.</u> § 9613(f)(3)(B). Given that § 9613(f) liability thus derives from § 9607(a), we discern no basis in the statutory scheme for concluding that Congress intended to provide states and municipalities with a defense only to claims arising under the former but not the latter statute.[7] Rather, we conclude that § 9607(d)(2) provides an affirmative defense to all three

settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

<u>Id.</u> § 9613(f).

[7] Indeed, such a selective application of § 9607(d)(2) would mean that plaintiffs could seek costs and damages from state or municipal defendants providing emergency responses under § 9607(a), but could not seek contribution from such defendants under § 9613(f)(1) "during or following any civil action under . . . section 9607(a)," even where the underlying acts giving rise to liability are identical. <u>See generally</u> <u>Cooper Indus., Inc. v. Aviall Servs., Inc.</u>, 543 U.S. at 165-68 (construing § 9613(f)(1)). We decline to adopt an interpretation of

16

cost-shifting provisions, which is further consistent with the expansive (d)(2) reference to all of Subchapter I.  See supra n.4.

Construing § 9607(d)(2) as an affirmative defense to a § 9607(a) claim does not deprive § 9607(d)(3) of all meaning, as plaintiffs contend.  Sections 9607(d)(2) and 9607(d)(3) together make clear that state and local governments cannot avoid § 9607(a) liability for hazardous material releases that occur in the course of responses to emergencies at sites they own.  Similarly, state and local governments remain liable under § 9607(a) for costs or damages caused by their gross negligence or intentional misconduct in responding to emergencies. Finally, § 9607(d)(3) clarifies that state and local governments remain liable under § 9607(a) for actions other than those involving emergency responses.  This last conclusion is consistent with the only case we have identified that specifically discusses § 9607(d)(3): United States v. Stringfellow, No. 83-cv-2501, 1993 WL 565393, at *130 (C.D. Cal. Nov. 30, 1993).[8]  Stringfellow rejected a claim of § 9607(d)(2) immunity because the state had taken numerous actions that went beyond the emergency response defined in

_____

§ 9607(d)(2) that would premise its application solely on the timing of the plaintiffs' claims against state or municipal defendants.

[8] The cited opinion was authored by a special master whose findings of fact, conclusions of law, and recommendations were adopted by the district court two years later in United States v. Stringfellow, No. 83-cv-2501, 1995 WL 450856, at *2 (C.D. Cal. Jan. 24, 1995).  One other case cites to, but does not discuss, the § 9607(d)(3) savings provision.  See United States v. Berks Assocs., Inc., No. 91-cv-4868, 1992 WL 68346 (E.D. Pa. Apr. 1, 1992).

17

the statute. See id.[9] The opinion concluded that, "under § 9607(d)(3), the State, as an otherwise liable party, is not entitled to exoneration under § 9607(d)(2)." Id. (emphasis added). In short, Stringfellow interpreted § 9607(d)(3) as preserving state and local government liability under § 9607(a) for acts other than those covered by § 9607(d)(2). We here do the same.

This interpretation of the savings provision – preserving state and local government liability under § 9607(a) for all acts other than the emergency responses specifically covered by § 9607(d)(2) – is not only consistent with the structure of the statute, but also supported by CERCLA's legislative history. The House Conference Report notes that the savings provision "clarifies that this subsection [i.e., § 9607(d)(2)] does not apply to or alter the liability of any potentially responsible party who is otherwise covered by section [9607(a)]." See H.R. CONF. REP. 99-962, 204, reprinted in 1986 U.S.C.C.A.N. 3276, 3297 (emphasis added).

The introductory language of § 9607(a) warrants no different conclusion. As discussed earlier, § 9607(a) begins by stating that its definition of covered persons and the scope of their liability applies "[n]otwithstanding any other provision or rule of law, and

---

[9] Specifically, the state "select[ed], investigat[ed], design[ed], and supervis[ed] construction of the Site." United States v. Stringfellow, 1993 WL 565393, at *130. It also "overs[aw] Stringfellow's operation of the Site, operat[ed] the Site after Mr. Stringfellow closed it . . . , and arrang[ed] for disposal of hazardous substances at the Site after closure." Id. Finally, the state conducted a "controlled release" of hazardous materials from the site. Id.

subject only to the defenses set forth in [§ 9607](b)." 42 U.S.C. § 9607(a). The amendment history, however, demonstrates that Congress did not employ this language to nullify the defense provided in § 9607(d)(2). See, e.g., Bailey v. United States, 516 U.S. 137, 147 (1995) (relying on amendment history to discern Congress's intent). The introductory language in § 9607(a) was enacted in 1980 as part of CERCLA. See Pub. L. No. 96-510, § 107(a), 94 Stat. 2767, 2781 (1980). Congress added the § 9607(d)(2) affirmative defense in a 1986 amendment to CERCLA. See Pub. L. No. 99-499, 100 Stat. 1613, 1629. As the Supreme Court has explained, "a specific policy embodied in a later federal statute should control our construction of the earlier statute, even though it has not been expressly amended." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 143 (2000) (alterations and internal quotation marks omitted). In accordance with this authority, we conclude that Congress's 1986 policy decision to confer immunity on emergency responders (except in cases of gross negligence or intentional misconduct), as embodied in § 9607(d)(2), takes precedence over the 1980 introduction to § 9607(a), even though the latter was not specifically amended in 1986.

We further note that our interpretation of § 9607(d)(2) as an affirmative defense to a § 9607(a) claim finds support in the decisions of our sister circuits. The courts of appeals that have interpreted § 9607(d)(2) have treated that subparagraph as granting immunity to state and local governments providing emergency responses without reference to the savings provision in § 9607(d)(3). See, e.g., United States v. Davis, 261 F.3d 1, 61 (1st Cir. 2001)

19

("According to the plain language of § 9607(d)(2), state and local governments are immune except in cases where their handling of the waste amounts to 'gross negligence or intentional misconduct.'"); United States v. Cordova Chem. Co., 113 F.3d 572, 581 (6th Cir. 1997) (holding that state department escapes § 9607(a) liability "because its actions were taken in response to the Act's environmental emergency provision"), vacated on other grounds sub nom. United States v. BestFoods, 524 U.S. 51; FMC Corp. v. U.S. Dep't of Commerce, 29 F.3d 833, 841 (3d Cir. 1994) ("Although CERCLA permits the imposition of liability on states and local governments for cleanup costs, section [9607](d)(2) expressly immunizes them from liability for actions 'taken in response to an emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by another person.'" (quoting 42 U.S.C. § 9607(d)(2)); see also East Bay Mun. Util. Dist. v. U.S. Dep't of Commerce, 142 F.3d 479, 483 (D.C. Cir. 1998) (noting in dicta that § 9607(d)(2) "gives state and local governments a partial defense against claims arising from their emergency remediation efforts, limiting their liability to cases of gross negligence or intentional misconduct"). In dicta, we too have previously observed that "where a municipality acts in response to an emergency caused by the release of hazardous substances from a facility owned by another party and does not act with gross negligence or willful misconduct, § 9607(d)(2), no liability attaches." B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1199 (2d Cir. 1992). Moreover, in Pennsylvania v. Union Gas Co., the Supreme Court cited § 9607(d)(2) and noted that both states and local governments "enjoy special exemptions

20

from liability under CERCLA" pursuant to that subparagraph. 491 U.S. 1, 13 (1989), overruled on other grounds by Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). In contrast to this well-established line of cases, we are unaware of any precedent supporting plaintiffs' reading of the § 9607(d)(3) savings provision to preclude a § 9607(d)(2) defense to a § 9607(a) claim.

In sum, we conclude that Congress intended the § 9607(d)(3) savings provision to preserve state and municipal liability under CERCLA except with respect to emergency response actions falling within the scope of § 9607(d)(2). Consequently, in accord with the plain language of the statute, the great weight of authority, and the legislative history, we reject plaintiffs' construction of the savings provision, and we conclude that § 9607(d)(2) provides an affirmative defense to a § 9607(a) claim for actions taken by a state or local government in response to an "emergency created by the release or threatened release of a hazardous substance generated by or from a facility owned by another person." 42 U.S.C. § 9607(d)(2). We discern no error in the jury instructions to the extent they reflect this understanding. Nor do we identify error in the court's own consideration of whether the facts established a § 9607(d)(2) defense.

### (2)     Plaintiffs' Challenge to the Verdict Sheet

Because we reject plaintiffs' argument that a § 9607(d)(2) defense is unavailable on a § 9607(a) claim, we necessarily reject their related challenge to the inclusion of questions about this defense on the verdict sheet. We nevertheless identify certain concerns about how

21

the questions were posed.

The verdict sheet asked the jury four identical CERCLA-related questions for each of the two municipal defendants: questions one though four related to the Fire Company[10]

---

[10] The questions pertaining to the Fire Company were as follows:

1.   Did the defendants prove that the defendant North Amityville Fire Company was taking action "in response to an emergency created by the release or threatened release of a hazardous substance"?

YES _____                    NO _____

If your answer to question 1 is "YES," please answer question 2.
If your answer to question 1 is "NO," you have found a verdict in favor of the defendant North Amityville Fire District in the first Federal CERCLA cause of action. Please proceed to question 3.

2.   Did the plaintiffs prove that in its actions at the scene of the fire, the defendant North Amityville Fire Company acted with gross negligence or intentional misconduct?

YES _____                    NO _____

If your answer to question 2 is "YES," you have found a verdict in favor of the plaintiffs AMW Materials Testing and Anthony Antoniou against the defendant North Amityville Fire Company in the First Federal CERCLA cause of action. In that event, please proceed to question 5.

If your answer to question 2 is "NO," you have found a verdict in favor of the defendant North Amityville Fire Compay in the first CERCLA cause of action. Please proceed to question 3.

3.   Did the plaintiffs prove that some time during its presence at the scene of the fire, the defendant North Amityville Fire Company was **not** taking action "in response to an emergency created by the release or threatened release of a hazardous substance"?

YES _____                    NO _____

22

and questions five through eight related to the Town of Babylon.[11]

If your answer to question 3 is "YES," please answer question 4.
If your answer to question 3 is "NO," you have found a verdict in favor of the defendant North Amityville Fire Company in the Second Federal CERCLA cause of action. Please proceed to question 5.

4.      Did the plaintiffs prove that the defendant North Amityville Fire Company was an "operator" of the AMW Materials Testing facility, as the Court defined that term for you?

              YES _____              NO _____

If your answer to question 4 is "YES," you have found a verdict in favor of the plaintiffs and against the defendant North Amityville Fire Company in the Second Federal CERCLA cause of action. Please proceed to question 5.

If your answer to question 4 is "NO," you have found a verdict in favor of the defendant North Amityville Fire Company in the Second Federal CERCLA cause of action.  Please proceed to question 5.

Verdict Sheet at 1-3 (first and second emphases added, third in original).

[11] The questions pertaining to the Town of Babylon were as follows:

5.      Did the defendants prove that the defendant Town of Babylon was taking action "in response to an emergency created by the release or threatened release of a hazardous substance"?

                YES _____              NO _____

If your answer to question 5 is "YES," please answer question 6.
If your answer to question 5 is "NO," you have found a verdict in favor of the defendant North Amityville Fire District [sic] in the first Federal CERCLA cause of action. Please proceed to question 7.

6.      Did the plaintiffs prove that in its actions at the scene of the fire the defendant Town of Babylon acted with gross negligence or intentional misconduct?

                YES _____              NO _____

23

It appears that, at least as to questions one and five, plaintiffs objected to the verdict sheet

with the specificity required by Fed. R. Civ. P. 51. We therefore review those challenges <u>de</u>

---

> If your answer to question 6 is "YES," you have found a verdict in favor of the plaintiffs AMW Materials Testing and Anthony Antoniou against the defendant Town of Babylon in the first Federal CERCLA cause of action. In that event, please proceed to instructions preceding question 9.
>
> If your answer to question 6 is "NO," you have found a verdict in favor of the defendant Town of Babylon in the first CERCLA cause of action. Please proceed to question 7.

7. Did the <u>plaintiffs</u> prove that some time during its presence at the scene of the fire, the defendant Town of Babylon was **not** taking action "in response to an emergency created by the release or threatened release of a hazardous substance"?

> YES _____          NO _____

> If your answer to question 7 is "YES," please answer question 8.
> If your answer to question 7 is "NO," you have found a verdict in favor of the defendant Town of Babylon in the Second Federal CERCLA cause of action. Please proceed to the instructions preceding question 9.

8. Did the plaintiffs prove that the defendant Town of Babylon was an "operator of" the AMW Materials Testing facility, as the Court defined that term for you?

> YES _____          NO _____

> If your answer to question 8 is "YES," you have found a verdict in favor of plaintiffs and against the defendant Town of Babylon in the Second Federal CERCLA cause of action. Please proceed to the instructions preceding question 9.
>
> If your answer to question 8 is "NO," you have found a verdict in favor of the defendant Town of Babylon in the second Federal CERCLA cause of action. Please proceed to the instructions preceding question 9.

Verdict Sheet at 3-5 (first and second emphases added, third in original).

novo. See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 167 (2d Cir. 2001).

Questions one and five incorrectly instructed the jury that a negative answer to the emergency response inquiry would result in a verdict for defendants. In fact, a jury finding that defendants were not responding to an emergency as defined in § 9607(d)(2) would mean that defendants were not entitled to the (d)(2) affirmative defense. The concern raised by the identified error is not merely hypothetical because the jury in fact answered "NO" to question one (pertaining to the Fire Company), not reaching question two. By contrast, the jury answered "YES" to question five (pertaining to the Town of Babylon) and "NO" to question six, which asked whether plaintiffs had proved that the defendant acted with gross negligence or intentional misconduct at the scene of the fire. As a result, the verdict sheet suggests a jury determination that the Fire Company was not entitled to the § 9607(d)(2) defense, but that the Town of Babylon was entitled to the defense. Given that the Town responded to the fire principally through the Fire Company, a question arises as to how these seemingly inconsistent answers might be harmonized.[12]

Further concerns are raised by questions three, four, seven, and eight, which focused on the possibility that defendants' actions after they arrived at the scene were not all part of an emergency response. Unlike questions one and five, however, questions three and seven placed the burden on plaintiffs to disprove the (d)(2) defense. In light of our earlier

_____

[12] Indeed, confusion in the jury response is amplified by the mistaken reference to the Fire District in the instructive language following question five.

discussion of this affirmative defense in Part II.A.2, this burden assignment was improper, making the jury's negative responses to questions three and seven unreliable as a basis for a judgment in favor of defendants.

As already noted, however, the challenged judgment was not based on these findings. The district court treated the jury's CERCLA responses as only advisory, and itself made independent findings of fact and conclusions of law. Accordingly, we proceed to consider plaintiffs' argument that the challenged judgment was entered in violation of their Seventh Amendment right to trial by jury.

### (3) Plaintiffs' Seventh Amendment Challenge

The Seventh Amendment affords a right to trial by jury in civil cases arising in law rather than equity. See U.S. Const. amend. VII; City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 708-09 (1999) (observing that Amendment requires jury trials in actions analogous to suits at common law "'in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered'" (quoting Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 447 (1830) (Story, J.))). The district court concluded that plaintiffs were not entitled to a jury trial on their § 9607(a) claims (or defenses related thereto) because the relief sought, restitution, was grounded in equity rather than law. Because plaintiffs' objection to this ruling was preserved below, we review the district court's decision de novo. See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 178 (2d Cir. 2007) (holding that

26

"resolution[s] of legal questions, including jurisdiction and the right to a jury trial, are subject to de novo review").

Courts that have considered the right to a jury trial under § 9607(a) have concluded that the section provides for restitution, that restitution is an equitable remedy to be determined by a court, and that a plaintiff therefore has no right to a jury trial on a § 9607(a) claim. See, e.g., Hatco Corp. v. W.R. Grace & Co., 59 F.3d 400, 414 (3d Cir. 1995); United States v. R.W. Meyer, Inc., 889 F.2d 1497 (6th Cir. 1989), aff'g United States v. Northernaire Plating Co., 685 F. Supp. 1410, 1413 (W.D. Mich. 1988); United States v. Ne. Pharm. & Chem. Co., 810 F.2d 726, 749 (8th Cir. 1986); see also State of N.Y. v. Lashins Arcade Co., 91 F.3d 353, 362 n.7 (2d Cir. 1996) (collecting cases and stating in dicta that district court's ruling finding right to jury trial under CERCLA "stands alone (so far as we are aware) in opposition to the overwhelming weight of authority on this issue").

Each of these cases, however, was decided before the Supreme Court's discussion of restitution in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002). In Great-West, the Court cautioned that "not all relief falling under the rubric of restitution is available in equity" because, "[i]n the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." Id. at 212. The Court explained that a plaintiff could seek restitution at equity "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."

27

Id. at 213. "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Id. at 214. By contrast, claims for restitution at law "were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied)." Id. at 213. A plaintiff could seek such a remedy through a writ of assumpsit when "the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." Id. (emphasis in original) (internal quotation marks omitted). Such a claim was legal "because [plaintiff] sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Id. (internal quotation marks omitted).

In light of this explication, it is by no means clear that the restitution provided by § 9607(a) is equitable, rather than legal, in nature. If we were to conclude pursuant to Great-West that the Seventh Amendment entitled plaintiffs to a jury trial on their § 9607(a) claim, we might well remand the case to the district court with instructions (1) to treat the jury's responses on the CERCLA claims as binding rather than advisory; and (2) to harmonize the jury's findings to the extent they appear inconsistent or, if harmonization is not possible, to grant a new trial. See LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) ("[I]f the answers returned by the jury appear to be inconsistent with one another, it is the duty of the . . . court to attempt to harmonize the jury's answers, if it is at all possible under a fair

28

reading of the responses." (internal quotation marks omitted)).

In fact, we need not decide the Seventh Amendment question in this case because we conclude that, even if plaintiffs were entitled to a jury trial on their CERCLA claims, and even if the jury responses do not permit harmonization, defendants are, in any event, entitled to judgment as a matter of law on the trial record. See Neely v. Martin K. Eby Const. Co., 386 U.S. 317, 322 (1967) (recognizing courts' authority to enter judgment under Rule 50 on appeal); see also 28 U.S.C. § 2106 ("[A] court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.").

> (4) No Reasonable Jury Could Fail to Find Defendants Entitled to a § 9607(d)(2) Defense to Plaintiffs' § 9607(a) Claims
>
> (a) The § 9607(d)(2) Defense is Triggered by Objective Proof of Defendants' Response to an Emergency Created by the Threatened Release of Hazardous Materials Without Regard to Defendants' Subjective Awareness of that Threat

The trial evidence is overwhelming and undisputed that the emergency to which defendants responded was created, at least in part, by the threatened release of hazardous substances stored in the AMW facility. Indeed, plaintiffs concede the objective existence of such an emergency. See Appellants' Br. at 56.

29

Plaintiffs nevertheless assert that defendants are not entitled to a § 9607(d)(2) defense in the absence of proof of their subjective awareness of such an emergency – as opposed to a routine fire posing no threat of hazardous materials release – at the time of their initial response. We expect that in many emergency response cases involving CERCLA, the question of the responders' initial subjective knowledge of a threatened release of hazardous substances will not arise because the sole reason for a response is a threatened release. See, e.g., United States v. Davis, 261 F.3d at 60 (holding municipal government immune under § 9607(d)(2) for acts taken in response to emergency posed by private individuals). The presence of this subjective knowledge in some cases, however, does not support reading the statute to require it in every case. We identify no basis in the text or structure of the statute for placing such a subjective burden on defendants. Moreover, plaintiffs point to no case law supporting such a construction.[13]

By their nature, emergency situations require quick responses, often before risks are fully understood. The affirmative defense afforded by § 9607(d)(2) serves to ensure that

_____

[13] Plaintiffs point to some record evidence suggesting that, upon first responding to the AMW fire site, members of the Fire Company did not think they were responding to a threatened release of hazardous materials. To the extent a focus on the lack of such subjective knowledge may have informed the jury response to the first question on the jury sheet, that focus would have been wrong. In any event, any subjective unawareness was short-lived. The Fire Company Alarm Detail Dispatch for the AMW fire said, "Please Note Hazardous Materials." Fire Company Chief Tutt testified that, within a minute of arriving at the scene of the fire, he called Dispatch to note that there were "a lot of chemicals" on the scene and to request assistance from the Environmental Protection Agency. Shortly thereafter, representatives of the New York State Department of Environmental Conservation and the Suffolk County Department of Health arrived at the scene.

states and municipalities are not dissuaded from responding to emergency situations by the threat of strict liability under CERCLA. This goal would hardly be served by conditioning § 9607(d)(2) immunity on subjective knowledge, thereby encouraging delay in responding to an emergency while such knowledge was acquired. As the House Report to the 1986 CERCLA amendments notes, § 9607(d)(2) "removes a disincentive for governments to respond to emergencies covered by CERCLA." H.R. REP. 99-253, 73, reprinted in 1986 U.S.C.C.A.N. 2835, 2855; see also Pennsylvania v. Union Gas Co., 491 U.S. at 49 n.3 (White, J., concurring in part and dissenting in part) (quoting House Report). With this understanding of the purpose and history of § 9607(d)(2), we conclude that the proper inquiry under that section is solely objective, i.e., was the state or local government responding to an emergency caused by the release or threatened release of hazardous substances. If so, then regardless of what subjective knowledge the responders had about the hazards at issue when they first arrived on the scene, their CERCLA liability under § 9607(a) is limited to "gross negligence or intentional misconduct" in dealing with the emergency. 42 U.S.C § 9607(d)(2).

(b)     Plaintiffs' Failure to Prove Gross Negligence or Intentional Misconduct

Having determined as a matter of law that defendants were in fact responding to an emergency that threatened a release of hazardous substances, we conclude that plaintiffs' pursuit of their § 9607(a) claim depended on their proving gross negligence or intentional misconduct by defendants. The jury specifically found that plaintiffs failed to carry this

31

burden as to the Town of Babylon. Although the jury did not reach this question with respect to the Fire Company, we conclude that the trial record would not permit any reasonable jury to find that the costs or damages plaintiffs incurred in dealing with the hazardous materials release were a result of gross negligence or intentional misconduct by the Fire Company.

Section 9607(d)(2) defines "gross negligence" as "reckless, willful, or wanton misconduct."  This comports with the common law definition of gross negligence as "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998) (internal quotation marks omitted) (applying standard and stating that rules establishing cause of action for gross negligence are "well-settled under New York law");  Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 963 (1992) (applying same standard).  Indeed, this court has identified "reckless conduct" as that which "generally imports the concept of heedless indifference to consequences to another," Bryant v. Maffucci, 923 F.2d 979, 985 (2d Cir. 1991), and as "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it," Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978) (internal quotation marks omitted); accord Chill v. Gen. Elec. Co., 101 F.3d 263, 269 (1996); see also Saarinen v. Kerr, 84 N.Y.2d 494, 501, 620 N.Y.S.2d 297, 300 (1994) (holding that a standard of "reckless disregard for the safety of others" required evidence that defendant had engaged in conduct

32

"of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and ha[d] done so with conscious indifference to the outcome" (internal quotation marks omitted)).

Although plaintiffs adduced some evidence questioning particular decisions made by the Fire Company in fighting the blaze at the AMW facility, they do not argue on appeal that the decisions manifested gross negligence, nor could they in light of evidence that the decisions, far from representing "an extreme departure from the standards of ordinary care," Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d at 47, fell well within industry standards, see Chill v. Gen. Elec. Co., 101 F.3d at 269 (noting that facts alleged to support recklessness must be "strong circumstantial evidence" of that recklessness (internal quotation marks omitted)). Instead, they argue that defendants' alleged violation of the Occupational Safety and Health Administration ("OSHA") regulation at 29 C.F.R. § 1910.120, requiring training for persons engaged in hazardous substance operations, demonstrates defendants' gross negligence or intentional misconduct. The argument merits little discussion.

Section 1910.120 is meant to ensure the safety of employees engaged in operations at hazardous waste sites, see id. § 1910.120(a)(1)(i)-(iii); at hazardous waste treatment, storage, or disposal facilities, see id. § 1910.120(a)(1)(iv); and at the site of an emergency response to the release, or threatened release of hazardous substances, see id. at § 1910.120(a)(1)(v). See generally Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 96 (1992) (observing that OSHA regulations were promulgated in furtherance of Congress's

33

intent "'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions'" (quoting 29 U.S.C. § 651(b))). It says nothing about protecting <u>owners</u> from property damage caused by untrained workers. Assuming without deciding that a factfinder could have concluded that the Fire Company failed to comply with OSHA training requirements meant to promote employee safety, some further evidence was necessary to demonstrate that the failure manifested intentional misconduct toward plaintiffs or so "extreme [a] departure from the standards of ordinary care" as to constitute gross negligence. <u>Rolf v. Blyth, Eastman Dillon & Co.</u>, 570 F.2d at 47. Moreover, some further evidence was necessary to link defendants' intentional misconduct or gross negligence to the costs or damages for which plaintiffs sought compensation. Indeed, the trial court so instructed the jury, without objection:

> The plaintiffs claim that the defendants violated certain OSHA regulations. That's up to you to determine whether they proved that by a preponderance of the evidence. If you find that the defendants violated these OSHA regulations that apply to this case, you may consider the violation <u>as some evidence of negligence along with other evidence in the case</u>, <u>provided that such violation was a substantial factor in causing damages</u>. However, if you find that the plaintiffs proved such a violation of OSHA regulations, it is not conclusive. It is only some evidence of negligence.

Trial Tr. at 2273 (emphasis added). Because such further evidence is lacking from the trial record, we conclude that the § 9607(d)(2) defense was established as a matter of law in this case, and that judgment on the CERCLA claims was properly entered in favor of defendants.

34

B.    Plaintiffs' State Law Claims

1.    Negligence

Plaintiffs submit that the judgment in favor of defendants on their negligence claim is infected by an error in the district court's jury instructions regarding the "special relationship" giving rise to a municipal duty in tort. See Pelaez v. Seide, 2 N.Y.3d 186, 198-99, 778 N.Y.S.2d 111, 117 (2004). Because plaintiffs failed to object to this part of the charge at trial, our review is limited to fundamental error.[14] SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d 329, 343 (2d Cir. 2004). In fact, we identify no error in the court's instructions.

In Pelaez v. Seide, 2 N.Y.3d at 198-202, 778 N.Y.S.2d at 116-19, the New York Court of Appeals held that, in determining whether a municipality has voluntarily assumed a duty, the breach of which gives rise to tort liability, a factfinder must consider four factors set forth in Cuffy v. City of New York, 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 375 (1987). The Court of Appeals explained:

> Most of our municipal special relationship cases have centered on whether a municipality has assumed an affirmative duty that generated justifiable

_____

[14] At the first trial, the district court explained that "in order to prove that [plaintiffs] had a special relationship with the Town of Babylon or the North Amityville Fire Company, the plaintiffs must show, must prove, the following factors. And I go through the four Cuffy factors. Yes?" Trial 1 Tr. at 2746-47. The district court continued, "However, if the plaintiff proves the four factors that are set forth in Cuffy, then there could be liability, and that's what I'm going to charge the jury." Id. at 2747-48. Plaintiffs did not object at any time during this discussion, and the district court's instructions to the jury at the second trial were consistent with these observations.

35

reliance by the plaintiff. We laid out the test in Cuffy v. City of New York . . . . It requires (1) an assumption by a municipality, through promises or actions, of an affirmative duty to act on behalf of the injured party; (2) knowledge on the part of a municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

Pelaez v. Seide, 2 N.Y.3d at 202, 778 N.Y.S.2d at 119. This is precisely the approach the district court adopted in its jury instruction. See Trial Tr. at 3567-68. Accordingly, because we identify no error, let alone fundamental error, in the court's charge, we affirm the negligence judgment in favor of defendants.

### 2. New York Navigation Law

Plaintiffs assert that the district court erred in denying their motion for judgment as a matter of law or a new trial on their New York Navigation Law claim for a petroleum discharge. See Fed. R. Civ. P. 50, 59. Where, as here, a jury has deliberated in a case and actually returned its verdict, a district court may set aside the verdict pursuant to Rule 50 only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." Cross v. New York City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005) (alterations and internal quotation marks omitted). "Although we review the district court's denial of a Rule 50 motion de novo, we are bound by the same stern standards." Id. A district court may grant a new trial pursuant to Rule 59 even when

36

there is evidence to support the jury's verdict, so long as the court "determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005) (alterations and internal quotation marks omitted). The standard for ordering a new trial is therefore somewhat less stern than that for entering judgment as a matter of law, but our review of a district court's disposition of a Rule 59 motion is more deferential, and we will not reverse except for abuse of discretion. Id.

New York law holds "[a]ny person who has discharged petroleum . . . strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained, as defined in this section." N.Y. Nav. Law § 181(1). Plaintiffs argue that there was "not a scintilla of evidence" to support the jury's finding that defendants did not discharge petroleum in the course of fighting the AMW fire. Appellants Br. at 66. The record is to the contrary. Notably, defendants' expert Andrew Barber testified that none of the data collected on the night of the fire indicated a release of petroleum. Indeed, Barber testified that a fire as large as the one at the AMW facility would likely have consumed any petroleum on the site. Barber further testified that the oil-soaked soil behind the AMW warehouse did not necessarily point to a petroleum release during the fire because that site involved a "dry well that probably hadn't been cleaned out in some period of time." Trial Tr. at 2802. Similarly, Nick Acampora, a New York State Department of Environmental Conservation spill inspector who responded to the fire, testified that he did not recall seeing,

nor did his contemporaneous notes mention, a "petroleum sheen" on any of the runoff water from the fire. Id. at 1775. He testified that observation of any such sheen would have been sufficiently important to include in his report. Janet Gremli, a Suffolk County Department of Health employee who responded to the fire, testified that she had no recollection of a petroleum sheen on any of the runoff water. Assuming as we must that this testimony was credited by the jury, it suffices to support a verdict in favor of defendants on the Navigation Law claim and the denial of plaintiffs' motion to enter judgment in their favor or to grant a new trial.

In further support of their new trial motion on the Navigation Law claim, plaintiffs submit that they were denied a fair trial by defendants' display to the jury, during summation, of documents not in evidence purportedly supporting their argument that no petroleum was discharged. The district court specifically instructed the jury that the documents had not been received in evidence and were not to be considered during deliberations. The law recognizes a strong presumption that juries follow such limiting instructions unless there is an overwhelming probability of their inability to do so. See, e.g., United States v. Snype, 441 F.3d 119, 129-30 (2d Cir. 2006) (collecting cases). This case poses no such probability. Although plaintiffs now complain that the court's instruction was deficient in various respects, because they voiced no such objection before the jury began its deliberations, our review is limited to fundamental error, and we identify none in this case. See SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d at 343. Accordingly, we identify no merit in this part of

38

plaintiffs' new trial argument.

III.   **Conclusion**

To summarize, we conclude as follows:

(1)   Section 9607(d)(2) of Title 42 is an affirmative defense to CERCLA liability under § 9607(a), and, accordingly, the district court did not err in treating it as such;

(2)   Whether the § 9607(a) claims in this case were properly tried to a jury or to the court, on the trial record no reasonable factfinder could decline to find that defendants are entitled to the affirmative defense set forth in § 9607(d)(2);

(3)   The district court properly referenced the factors set forth in Cuffy v. City of New York, 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 375 (1987), in charging the jury as to plaintiffs' theory of defendants' municipal liability for negligence under New York law.

(4)   The district court properly denied plaintiffs' motion for judgment as a matter of law or a new trial on their claim for the discharge of petroleum under N.Y. Nav. Law § 181(1).

Accordingly, the judgment in favor of defendants is hereby AFFIRMED.