TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00301-CV






Appellants, Henry L. Zumwalt and H.L. Zumwalt Construction, Inc. // Cross-Appellant,
The City of San Antonio, acting by and through its 

San Antonio Water System Board of Trustees


v.


Appellee, The City of San Antonio, acting by and through its San Antonio Water System
Board of Trustees // Cross-Appellees, Henry L. Zumwalt and 

H.L. Zumwalt Construction, Inc.






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GV-08-001195, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 Henry L. Zumwalt and H.L. Zumwalt Construction, Inc. (collectively "Zumwalt")
filed a third-party action against the City of San Antonio, acting by and through the San Antonio
Water System Board of Trustees, ("SAWS"), seeking to apportion liability for costs the State of
Texas and other governmental entities incurred in connection with fighting a fire at a dump site
Zumwalt owned and operated. Zumwalt alleges that, because SAWS limited the quantity and
permissible uses of the water it provided for fire-fighting activities, it is liable for costs under the
Texas Solid Waste Disposal Act ("TSWDA") as an "operator" of the dump site. See Tex. Health
& Safety Code Ann. §§ 361.271(a)(1), (a)(2) (West 2010) (defining "persons responsible for solid
waste"). The trial court granted SAWS's plea to the jurisdiction, concluding that "SAWS' conduct
in providing water to the property (or stopping it, limiting it or doing otherwise)" does not give rise
to operator liability under the TSWDA. Zumwalt appeals the trial court's dismissal order. By
cross-appeal, SAWS challenges the trial court's additional holding that the TSWDA waives
governmental immunity. (1) We will affirm without reaching the issue presented in SAWS's
cross-appeal.


FACTUAL AND PROCEDURAL BACKGROUND

 This case is before us on an appeal from an interlocutory order dismissing Zumwalt's
claims against SAWS for lack of jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8)
(West Supp. 2011) (authorizing appeal of interlocutory orders granting or denying plea to
jurisdiction by governmental unit). SAWS's plea to the jurisdiction challenged whether the TSWDA
waives governmental immunity and, alternatively, whether Zumwalt had alleged facts sufficient to
affirmatively demonstrate jurisdiction. Both of these issues are questions of law that we review de
novo. Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). To the extent
SAWS's plea to the jurisdiction challenged the sufficiency of the pleadings to demonstrate
jurisdiction, we must construe the pleadings liberally in Zumwalt's favor and look to his intent. Id. 
In its plea to the jurisdiction, SAWS did not challenge the allegations in Zumwalt's pleadings;
therefore, those allegations are taken as true for purposes of the plea to the jurisdiction and are
recounted below. See City of Dallas v. VSC, LLC, 347 S.W.3d 231, 241 (Tex. 2011).

 Zumwalt owned and operated a dump site for brush, wood, and other materials in
Helotes, Texas. A massive debris pile on the dump site caught fire on December 26, 2006. Initially,
Zumwalt fought the fire on his own, using up to 50,000 gallons of water per day from two wells on
the property. Shortly thereafter, the Texas Commission on Environmental Quality ("TCEQ")
assumed control of the fire-fighting operations, hiring its own contractors for that purpose. The
TCEQ asked SAWS to enter an agreement with one of the contractors to provide water for TCEQ's
fire-fighting operation because SAWS was capable of providing significantly greater quantities of
water than were otherwise available to the TCEQ. It is undisputed that SAWS had no obligation to
provide water to the Zumwalt dump site, but it agreed to do so.

 Zumwalt's dump site is located over the Edwards Aquifer recharge zone, and when
the TCEQ's contractors poured millions of gallons of water directly on the fire, several water wells
became contaminated and the Edwards Aquifer itself was threatened. In response, SAWS initially
cut off its supply of water to the site. Although there remained water available to fight the fire
through the same wells Zumwalt had been using, no fire-fighting operations occurred for
approximately 29 days until SAWS agreed to resume supplying water. SAWS's agreement to
provide water was not unconditional, however; SAWS limited both the quantity of water it would
supply and the permissible uses of the water.

 Initially, SAWS agreed to supply a maximum of 300,000 gallons of water per day for
use on the debris pile, up to 200,000 additional gallons per day for other fire-fighting uses, and
unlimited water as necessary to prevent injury, loss of life, or damage to other structures. The TCEQ
further agreed that it would not engage or contract with other water suppliers and that SAWS would
serve as the sole water purveyor.

 In late February, further concerns arose about well-water and aquifer contamination. 
SAWS determined that none of its water could be used directly on the debris pile but authorized up
to 500,000 gallons of water to be used for other purposes, including extinguishing the fire by
incrementally transferring portions of the debris pile to a quenching pit. (2) This limitation meant that
no water could be used to suppress smoke emanating from the debris pile.

 The fire on Zumwalt's property was ultimately extinguished by the end of March
2007, approximately two months later than the TCEQ's contractors had initially estimated. The
original time and cost estimates were apparently based on an assumption that there would be
virtually unlimited access to SAWS's water supply. When that assumption proved inaccurate, the
cost of the response event and the time to extinguish the fire increased dramatically.

 In June 2008, the TCEQ sued Zumwalt for, among other things, recovery of TCEQ's
fire-fighting costs. More than two years later, Zumwalt filed a third-party action against SAWS,
seeking apportionment of liability under section 361.343 of the TSWDA, contribution, and offset
of damages. (3) See Tex. Health & Safety Code Ann. § 361.343 (West 2010) (setting forth factors to
be considered in apportioning costs for elimination of release or threatened release of solid waste
among "persons responsible for solid waste"). (4) Zumwalt alleged that the TCEQ, its contractors, and
SAWS were all negligent and grossly negligent in conducting the fire-fighting operations on his
property. Zumwalt claimed that this negligence caused the cost of fighting the fire to greatly exceed
the cost estimates the TCEQ's contractors had initially provided for extinguishing the fire.

 According to Zumwalt, SAWS's negligent acts were that it stopped, and then limited,
the supply of fire-fighting water, which it did in order to protect the Edwards Aquifer from
contamination. Zumwalt alleged that, by cutting off the entire water supply for at least 29 days and
thereafter strictly rationing water needed to fight the fire and conduct smoke suppression operations,
SAWS effectively controlled the cause of the contamination--the fire and smoke emanating from
the debris pile and any contaminants being disbursed as the fire raged on--because water was
essential to the fire-fighting operations. Because SAWS controlled the water, Zumwalt contends that
SAWS exercised direct control over when, how, and how much fire-fighting and smoke-suppression
operations the contractors conducted, such that SAWS effectively controlled the Helotes Fire itself. 
By virtue of these acts of "control," Zumwalt asserts, SAWS became a "person responsible" for
Zumwalt's solid waste under section 361.271 of the TSWDA. Id. § 361.271(a)(1), (a)(2) (creating
liability for "operators" of solid waste facilities).

 SAWS filed a plea to the jurisdiction asserting its governmental immunity from suit,
alleging that (1) the TSWDA does not waive governmental immunity from third-party claims for
monetary damages, and (2) even if the TSWDA waives immunity from such third-party suits, the
court lacks jurisdiction because Zumwalt failed to plead a viable cause of action against SAWS and
the defect is incurable. The second ground was based on the argument that, even assuming
Zumwalt's factual allegations to be true, SAWS is not "a person responsible for solid waste" within
the meaning of the statute. Although no evidence was required to respond to SAWS's plea to the
jurisdiction, Zumwalt attached evidence to his response brief, which generally supported and
amplified the allegations in his petition. Zumwalt's response also urged that he was entitled to an
opportunity to replead in lieu of dismissal with prejudice.

 The day before the hearing on the plea to the jurisdiction, Zumwalt requested a
continuance to conduct further discovery in order to respond to SAWS's jurisdictional challenge. 
The trial court denied the motion for continuance and, two months after the hearing, issued an order
concluding that, although the TSWDA waives governmental immunity, Zumwalt failed to plead a
viable cause of action against SAWS. The court neither expressly permitted Zumwalt to amend
his pleadings nor expressly disallowed him from doing so, but generally denied all relief not
otherwise granted.

 In four issues on appeal, Zumwalt contends that the trial court erred or abused its
discretion in (1) concluding that SAWS's activities were insufficient to confer operator liability and
thus effect a waiver of governmental immunity under the TSWDA; (2) denying Zumwalt's motion
for a continuance to allow an opportunity for additional discovery; (3) denying Zumwalt an
opportunity to replead his claims against SAWS; and (4) granting SAWS's plea to the jurisdiction
under section 361.344 of the TSWDA because Zumwalt did not plead a cause of action under that
theory. In a sole issue on cross-appeal, SAWS challenges the trial court's conclusion that the
TSWDA waives governmental immunity. (5)


DISCUSSION

"Persons Responsible for Solid Waste" under the TSWDA

 The TSWDA was intended to facilitate and encourage the prompt cleanup of solid
waste and to "force those responsible for creating hazardous waste problems to bear the cost of their
action." R.R. Street & Co. v. Pilgrim Enters., Inc., 81 S.W.3d 276, 291 (Tex. App.--Houston [1st
Dist.] 2001), rev'd in part on other grounds, 166 S.W.3d 232, 238 (Tex. 2005). Section 361.271
of the TSWDA delineates four categories of "persons responsible for solid waste," but only the
following two categories are at issue in this case: (1) a current owner or operator of a solid waste
facility, and (2) an owner or operator of a solid waste facility at the time of processing, storage, or
disposal of any solid waste. Tex. Health & Safety Code Ann. § 361.271(a)(1), (a)(2). It is
undisputed that SAWS has never held an ownership interest in the disposal site, and we will assume
for purposes of this appeal that Zumwalt's disposal site constitutes a "solid waste facility" as that
term is defined in the TSWDA. (6) See id. § 361.003(34) (West 2010) (definitions). Therefore, the
only question we consider is whether, assuming the facts Zumwalt alleges are true, SAWS could be
considered to have been an "operator" of the site during the fire-fighting operations.

 Our primary objective in construing statutes is to give effect to the legislature's intent,
which we seek "first and foremost" in the statutory text. First Am. Title Ins. Co. v. Combs,
258 S.W.3d 627, 632 (Tex. 2008). However, because the terms "operator" and "operate" are not
defined in the TSWDA and there are no binding precedents construing them, we rely on the plain
meaning of the text unless a different meaning is apparent from the context or application of the
plain language would lead to absurd results. City of Rockwall v. Hughes, 246 S.W.3d 621, 625-26
(Tex. 2008); see Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read
in context and construed according to the rules of grammar and common usage."). In construing
these terms, we recognize that the TSWDA is our state counterpart to two federal environmental
statutes: the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992 (2006),
and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"),
42 U.S.C. §§ 9601-9675 (2006). "While RCRA is designed primarily to regulate on-going
treatment, storage, and disposal of solid and hazardous waste, CERCLA was enacted to facilitate the
prompt clean-up of hazardous substances that have already been released into the environment and
to ensure that those responsible for the hazardous substances bear the cost of their actions." 
R.R. Street & Co., Inc. v. Pilgrim Enters., Inc., 166 S.W.3d 232, 238 (Tex. 2005).

 Because the TSWDA's purpose and statutory cost-recovery provisions are similar to
CERCLA's, see id., Zumwalt argues that we should look to CERCLA for guidance in defining the
terms "operator" and "operate." CERCLA rather unhelpfully defines the term "owner or operator"
as "any person owning or operating" a facility. 42 U.S.C. § 9601(20)(A)(ii). The circularity of this
definition has led federal courts to give those terms their "ordinary or natural meaning," United
States v. Bestfoods, 524 U.S. 51, 66 (1998), which is generally what is required under our own
principles of statutory construction. See City of Rockwall, 246 S.W.3d at 625-26. Applying the
ordinary and natural meaning of the term "operator," the United States Supreme Court has held that
under CERCLA


 an operator is simply someone who directs the workings of, manages, or conducts the affairs
of a facility. To sharpen the definition for purposes of CERCLA's concern with
environmental contamination, an operator must manage, direct, or conduct operations
specifically related to pollution, that is, operations having to do with the leakage or disposal
of hazardous waste, or decisions about compliance with environmental regulations.


Bestfoods, 524 U.S. at 66-67. (7) The Court summarized later that the verb "to operate" obviously
means "something more than mere mechanical activation of pumps and valves, and must be read to
contemplate 'operation' as including the exercise of direction over the facility's activities." Id. at 71.

 SAWS urges that we decline Zumwalt's invitation to apply the Bestfoods definition
of "operator" in this context, arguing that CERCLA authority is not instructive in this case because
CERCLA's liability provisions and the TSWDA's liability provisions differ markedly in scope. 
Among the differences SAWS identifies are CERCLA's inclusion of an express waiver of sovereign
immunity, 42 U.S.C. § 9620(a), and an exemption from strict liability for certain response actions. 
Id. § 9607(d). Under the exemption, state and federal actors taking actions in response to incidents
or emergencies created by the release or threatened release of a hazardous substance are subject to
liability under CERCLA only upon a showing of specified culpability. Id.; see also AMW Materials
Testing, Inc. v. Town of Babylon, 584 F.3d 436, 448 (2d Cir. 2009) (harmonizing exemption for
emergency situations with its savings provision and scope of operator liability). There are no
corollary provisions in the TSWDA. Thus, if the TSWDA waives immunity, as the trial court found,
and if operator liability extended to governmental actors conducting emergency response actions,
as Zumwalt contends, governmental responders could be strictly liable when assuming control of
a facility to address releases or threatened releases of contaminants. The practical import of this
distinction would be that a responding party in an action under the TSWDA would have a defense
whenever the government has initiated a cleanup action regardless of whether the governmental
actors acted with care in conducting the cleanup operations. As SAWS asserts, this cannot be what
the legislature intended in enacting the TSWDA. Cf. Stilloe v. Almy Bros., Inc., 782 F. Supp. 731,
735 (N.D.N.Y. 1992) (making similar conclusion under CERCLA and holding that "when a state
is acting solely in its statutory capacity to clean up a hazardous waste site, this activity does not raise
its status to that of an operator within the meaning of CERCLA"); United States v. Azrael, 765 F.
Supp. 1239, 1245-46 (D. Md. 1991) (same). Such a result would be inconsonant with the purposes
of CERCLA and the TSWDA to ensure that those who benefit financially from conducting a
commercial activity should internalize the health and environmental costs of that activity into the
costs of doing business. See U.S. v New Castle Co. 727 F. Supp. 854, 864-65 (D. Del. 1989)
(stating CERCLA's purposes). A mere supplier of goods to such an operation--like an electric
company or a water purveyor--although benefitting financially from the sale of its product, cannot
be considered to thereby profit from the commercial operation itself in a way that would render it
an "operator" of the customer's business even if the goods provided are essential to conducting the
onsite commercial operations. See Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d
155, 157 (7th Cir. 1988) (supplier of chemical used to treat lumber not "operator" of wood treatment
facility even though supplier also designed and built facility, trained employees how to operate
machinery, and licensed its trademark for use in connection with treated wood).

 SAWS also cites notable differences between CERCLA and the TSWDA regarding
key terms used in the liability provisions. Although CERCLA's extension of liability to a current
"owner" or "operator" of a "facility" or a former owner or operator of a facility "at the time of
disposal of any hazardous substance" is similar to the TSWDA's owner-and-operator-liability
provisions, CERCLA's definition of "facility" is much broader than the TSWDA's definition of
"solid waste facility." (8) In addition, the definition of "solid waste" under the TSWDA is broader
than, and inclusive of, the term "hazardous substance" under CERCLA. See Tex. Health
& Safety Code Ann. § 361.003(11) (hazardous substance definition), (34) (solid waste definition),
42 U.S.C. § 9601(14) (hazardous substance definition). According to SAWS, these are significant
variances that counsel against relying on CERCLA authority in this case, but why that is so is not
readily apparent.

 Nevertheless, assuming without deciding that the scope of operator liability under the
TSWDA is essentially coextensive with operator liability under CERCLA, we conclude that SAWS
was not an operator of Zumwalt's property as alleged. SAWS's "control" over the response action
at Zumwalt's site was, at most, indirect and did not rise to the level of an "operator" contemplated
by the Supreme Court in Bestfoods. Although Zumwalt contends that SAWS satisfied the Bestfoods
standard and "directly" controlled the fire-fighting operations at the dump site, we disagree. The
only thing SAWS had control of was its own water supply, and although that control had an effect
on the fire-fighting operations, it is not equivalent to control over operations at the site. We hold
that the type of indirect, attenuated impact that SAWS had in this case is not sufficient to confer
"operator" liability under the TSWDA. Zumwalt cites no authority compelling a contrary
conclusion, nor have we found any. Cf., e.g., Geraghty & Miller, Inc. v. Conoco, Inc., 234 F.3d 917,
928-29 (5th Cir. 2001) (holding that operator liability may exist for contractor who installed
monitoring wells at hazardous site, allegedly causing contaminants to spread); United States v.
Township of Brighton, 153 F.3d 307, 316 (6th Cir. 1998) ("operator" liability may exist for
governmental actor that took control of dump, including taking responsibility for ameliorating
unacceptable conditions at dump, making decisions about environmental compliance, and arranging
for bulldozing and other maintenance); FMC Corp. v. U.S. Dep't of Commerce, 29 F.3d 833, 837
(3d Cir. 1994) (United States was liable as "operator" for wartime activities at facility where it "was
involved directly and substantially with the facility's production activities and management
decisions"); Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp., 976 F.2d 1338, 1341-42 (9th
Cir. 1992) (stating that operator liability may exist for contractor working on development site
excavating and spreading contaminated soil over uncontaminated areas); United States v. Fleet
Factors Corp., 901 F.2d 1550, 1559 n.13 (11th Cir. 1990) (evidence showed that secured creditor
actively asserted control over disposal of hazardous wastes by prohibiting debtor from selling several
barrels of chemicals to potential buyers, which barrels then remained at facility until removal by
EPA), superseded by statute, 42 U.S.C. § 9601(20)(F)(i)(II); Ganton Tech. v. Quadion Corp.,
834 F. Supp. 1018, 1022 (N.D. Ill. 1993) (determining that commercial contractor hired to clean up
hazardous substances onsite could be "operator" under CERCLA); see also United States v. Iron
Mountain Mines, Inc., 881 F. Supp. 1432, 1449-50 (E.D. Cal. 1995) (government's actions
providing incentives and promoting private entity's wartime manufacture of substances that resulted
in hazardous-waste contamination were insufficient to constitute control over mine's activities). Nor
have we found any cases extending the reach of operator liability to a third-party purveyor of goods
to be used on a site subject to a response action (especially substances that do not otherwise
constitute "solid waste" or "hazardous substances"). Cf. Edward Hines Lumber, 861 F.2d at 156-58
(vendor who designed and built wood-treatment plant, trained plaintiff's employees to operate
machinery, licensed plaintiff to use its trademark in connection with treated wood, and supplied toxic
chemical plaintiff used to treat wood did not qualify as "operator" under CERCLA). Therefore, to
the extent Zumwalt also argues that SAWS was an operator because it provided water to the site,
which allegedly contributed to well-water contamination, we conclude that such conduct does not
fall within the ambit of operator liability under the TSWDA.

 What Zumwalt complains about in this case is the expansion of time it took to fight
the fire (and concomitant increase in costs) that resulted from SAWS's refusal to provide more water
or to let it be used unconditionally. If this conduct equated to "control" sufficient to confer
"operator" liability on SAWS, then SAWS arguably would also have been an "operator" if it had
refused to provide any water to support the response action, even though it was under no obligation
to do so. This would be an absurd result that clearly could not have been intended by the legislature. 
After reviewing the language and statutory framework of the TSWDA, as well as the policies
underlying the statute and analogous CERCLA authority, we hold that the legislature did not intend
operator liability under the TSWDA to sweep so broadly as to encompass SAWS's alleged actions
in this case. Even though the TSWDA may have broad legislative objectives, "'statutes have not
only ends but also limits.'" Edward Hines Lumber, 861 F.2d at 157. We overrule Zumwalt's first
appellate issue.


Opportunity to Amend Pleadings

 In his third appellate issue, Zumwalt argues that the trial court erred because it signed
an order of dismissal without providing him an opportunity to amend his petition. A plaintiff
generally deserves a reasonable opportunity to amend defective pleadings unless the pleadings
demonstrate incurable defects or negate the existence of jurisdiction. Texas A&M Univ. Sys.
v. Koseoglu, 233 S.W.3d 835, 839 (Tex. 2007). While the general rule expresses a preference for
allowing an amendment, a plaintiff can waive this opportunity through inaction. Cassidy
v. TeamHealth, Inc., No. 01-08-00324-CV, 2009 WL 2231217, at *7 (Tex. App.--Houston [1st
Dist.] July 23, 2009, pet. denied) (mem. op.) (stating plaintiffs had several opportunities both before
and after summary judgment was granted to amend pleadings or request opportunity to amend,
and no indication trial court denied such opportunity); Haddix v. American Zurich Ins. Co.,
253 S.W.3d 339, 347 (Tex. App.--Eastland 2008, no pet.) (finding waiver of opportunity to amend
when plaintiff made no effort to amend petition before or after trial court signed dismissal order and
never indicated how pleading deficiencies could be addressed in amended pleading); see also Kassen
v. Hatley, 887 S.W.2d 4, 13 n.10 (Tex. 1994) (stating plaintiffs waived complaint to dismissal by
summary judgment aimed solely at their pleadings when they did not request opportunity to amend
their petition in response to trial court's summary judgment).

 In Koseoglu, the supreme court "generally" endorsed the proposition that "'a plaintiff
may stand on his pleadings in the face of a plea to the jurisdiction unless and until a court determines
that the plea is meritorious.'" 233 S.W.3d at 839 (quoting lower court's opinion). In that case,
however, the plea to the jurisdiction had been granted by the court of appeals; thus, the plaintiff had
not had a reasonable opportunity to amend in the trial court and was entitled to a remand if the
defects were curable. Id. at 839-40. In contrast, Zumwalt did have an opportunity to file an
amended pleading or request an opportunity to replead after the trial court ruled on the merits of the
plea, but he failed to do so. Although Zumwalt requested an opportunity to replead in his response
to the plea to the jurisdiction, he made no effort to amend his petition in the trial court proceedings
below--either before the hearing on the plea to the jurisdiction or after the trial court granted the
plea. Nor did he ever advise the trial court what he could plead that would address the jurisdictional
deficiencies. There is also no indication in the record that the trial court precluded Zumwalt from
offering an amended pleading. Accordingly, we hold that Zumwalt is not entitled to a remand in
order to amend his pleadings because he already had a reasonable opportunity to amend in the
trial court but failed to do so. Parties are entitled to reasonable opportunities to amend, not
unlimited opportunities.

 Likewise, on appeal, Zumwalt has not described proposed amendments that he could
make that would bring SAWS within the scope of the TSWDA. The significance of this omission
is placed in perspective when one considers that, at the time Zumwalt filed his third-party action
against SAWS, the case had already been pending more than two years, and at the time of the hearing
on the plea to the jurisdiction, significant discovery had been conducted, including document
production and depositions of the major players in the response action. The record indicates that
there were extensive inquiries into SAWS's role in the response action during the course of
discovery. If there are additional material facts that could be pleaded, Zumwalt has failed to identify
them. At oral argument, in response to the Court's query regarding possible amendment, Zumwalt's
counsel suggested that he could add the amount of compensation SAWS was paid for the water, thus
showing the extent to which SAWS was acting as a commercial purveyor of water. The addition of
this allegation, however, even if true, would not change our analysis of the operator inquiry, nor the
result, in this appeal. Even if the better practice would have been for the trial court to specifically
grant Zumwalt an opportunity to amend, we cannot say the court committed reversible error in
failing to do so under the circumstances of this case. Zumwalt's third issue is overruled.


Denial of Motion for Continuance

 Zumwalt also challenges the trial court's denial of his request for a continuance to
conduct additional discovery before the hearing on the plea to the jurisdiction. A trial court's ruling
on a motion for continuance to conduct additional discovery is reviewed for abuse of discretion. Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 162 (Tex. 2004). An appellate court may reverse
for abuse of discretion only if it finds that the trial court's decision was so arbitrary and unreasonable
as to amount to a clear and prejudicial error of law. Id. There is no abuse of discretion where a trial
court could reasonably conclude that additional discovery was unnecessary and irrelevant to the legal
issues in the case. Id.

 In some cases, evidence is essential in determining whether the trial court has
jurisdiction over a governmental entity. See Miranda, 133 S.W.3d at 227 (observing that trial court
is required to "consider relevant evidence submitted by the parties" when such evidence is
"necessary to resolve the jurisdiction issues raised"). In this case, however, SAWS's plea to the
jurisdiction did not include or rely on evidence; rather, it was based solely on the statutory language
and the allegations in Zumwalt's pleadings, which SAWS did not dispute for purposes of its plea. 
Thus, it was not necessary for Zumwalt to present evidence to create a fact issue as to whether
SAWS had ever "operated" Zumwalt's solid waste facility. See id. at 226. The fact that Zumwalt
chose to file evidence in its response does not change the character of SAWS's plea. See Employees
Ret. Sys. of Tex. v. Putnam, LLC, 294 S.W.3d 309, 323 (Tex. App.--Austin 2009, no pet.) (there is
no need to allow for discovery before ruling on plea where there is no fact issue to be resolved). This
is true even if the trial court considered the evidence Zumwalt presented, which its order seems to
indicate, because the evidence merely substantiated and amplified the allegations in Zumwalt's
pleadings. The court was not obligated to review that evidence, but we fail to see how Zumwalt
could have been harmed by its doing so. Nor can we ascertain why Zumwalt would be entitled to
conduct more discovery and present more evidence as a result. Because Zumwalt failed to
demonstrate that additional discovery was necessary and also failed to identify what material facts
could potentially be uncovered with the additional discovery requested, we overrule Zumwalt's
second issue.


Liability under Section 361.344 of the TSWDA

 In his final appellate issue, Zumwalt contends that the trial court erroneously
adjudicated a non-pleaded and non-applicable theory of recovery in the order granting SAWS's plea
to the jurisdiction. In addition to concluding that Zumwalt's pleadings failed to state a claim for
operator liability under the TSWDA, the trial court also determined that Zumwalt could allege no
facts that would authorize a cost recovery action against SAWS under section 361.344 of the
TSWDA. See Tex. Health & Safety Code Ann. § 361.344 (West 2010) (governing cost recovery by
liable party or third party). Although Zumwalt's response to SAWS's plea to the jurisdiction
expressly asserted that he was entitled to "contribution, apportionment and offset damages, if any,
according to §§ 361.343 and 361.344 of the TSWDA," Zumwalt contends on appeal that (1) he did
not plead a theory of recovery under section 361.344, (2) that section does not apply to the pleaded
facts, and (3) the trial court erred in granting the plea to the jurisdiction on that basis. Because we
have determined that the trial court's dismissal order can be affirmed on other grounds, any error in
the trial court's order dismissing the lawsuit against SAWS under section 361.344 is harmless. See
Tex. R. App. P. 44.1 (error of law reversible only if error "probably caused the rendition of an
improper judgment"). We therefore overrule Zumwalt's fourth issue.


CONCLUSION

 For the reasons stated, we affirm the trial court's dismissal order.


 _________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Goodwin


Affirmed


Filed: May 17, 2012
1. Although courts occasionally use the terms "sovereign immunity" and "governmental
immunity" interchangeably, they are distinct concepts. Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 694 n.3 (Tex. 2003). "Sovereign immunity" refers to the state's immunity from
suit and liability, and its protection extends not only to the state but also to various divisions of state
government, including agencies, boards, hospitals, and universities. Id. "Governmental immunity,"
by contrast, protects political subdivisions of the state, including counties, cities, and school districts. 
Id. The trial court used the term "sovereign immunity" in the order on appeal, but we will use the
term "governmental immunity" in this opinion because the City of San Antonio is a political
subdivision of the state.
2. An attachment to Zumwalt's petition indicates that water continued to be used on the debris
pile in March, generally at similar or greater quantities than authorized under the original agreement
and in contravention of the amended agreement. In addition, this chart shows that total water
usage often exceeded the maximum amount of water SAWS agreed to provide. Nonetheless, we
assume the allegations stated in Zumwalt's petition are true, without regard to this apparently
conflicting evidence.
3. In response to SAWS's plea to the jurisdiction, Zumwalt also asserted that SAWS was
liable under section 361.344 of the TSWDA, which provides a cause of action for cost recovery by
a liable party or third party. Tex. Health & Safety Code Ann. § 361.344 (West 2010). This
provision was not mentioned in Zumwalt's third-party petition, however, and he contends on appeal
that the trial court erred in adjudicating what he characterizes as an unpleaded and inapplicable
theory of recovery.
4. The parties dispute whether section 361.343 embodies a statutory contribution action or
merely sets forth factors to be considered after liability has otherwise been established under the
TSWDA. The resolution of this issue is not essential to the disposition of this appeal, and we do not
reach it.
5. Shortly before oral argument, Zumwalt and the State of Texas settled the claims between
them. SAWS asserts that this settlement precludes Zumwalt from continuing the underlying
contribution and apportionment action against SAWS and constitutes an additional basis for
affirming the trial court's judgment. Zumwalt contends that the claims against SAWS remain viable
because claims by other governmental entities against Zumwalt remain pending. Because the
judgment can be affirmed on other grounds, we do not reach this issue.
6. Zumwalt denies that his property constitutes a "solid waste facility" as that term is defined
in the TSWDA. Tex. Health & Safety Code Ann. § 361.003(34) (West 2010). Pleading in the
alternative, however, he contends that if that matter is determined adversely to him, he is entitled to
apportionment of liability among all responsible parties, including SAWS. Therefore, for purposes
of the issues on appeal, we assume without deciding that Zumwalt's property is a "solid waste
facility" as that term is defined in the relevant statutes.
7. Although Zumwalt does not propose that we consult RCRA for interpretive guidance, we
note that the terms "owner" and "operator" are used extensively in that statute but are not defined
except in the subchapter concerning regulation of underground storage tanks. 42 U.S.C. § 6991(3). 
In that subchapter, the term means "any person in control of, or having responsibility for, the daily
operation of the underground storage tank." When used in the applicable regulations, the term
"operator" is defined as "the person responsible for the overall operation of a facility." 40 C.F.R.
§ 260.10. As a term that is essentially undefined in RCRA, we assume the federal courts would
apply the term's ordinary and natural meaning, resulting in a definition substantially similar
to CERCLA's definition. See Scarlett & Assocs., Inc. v. Briarcliff Ctr. Partners, LLC,
No. 1:05-CV-0145-CC, 2009 WL 3151089, at *12 (N.D. Ga. Sept. 30, 2009) ("Both parties agree
and case law indicates that the definition of operator is the same under RCRA and CERCLA.");
Board of Cnty. Comm'rs v. Brown Group Retail, Inc., No. 08-CV-00855-LTB, 2009 WL 1108463,
at *4 (D. Colo. Apr. 24, 2009) ("[T]he definition of 'operator' under RCRA is substantially the same
as the definition under CERCLA."); LeClerq v. Lockformer Co., No. 00 C 7164, 2002 WL 908037,
at *2 (N.D. Ill. May 6, 2002) (same). We have found no authority that suggests the contrary. To the
extent the RCRA definition of "operator" that is applicable to underground storage tanks is
analytically helpful, it appears substantially similar to the definition the Supreme Court adopted for
CERCLA in Bestfoods.
8. The TSWDA defines a "solid waste facility" as "all contiguous land, including structures,
appurtenances, and other improvements on the land, used for processing, storing, or disposing of
solid waste." Tex. Health & Safety Code Ann. § 361.003(36). A "facility" under CERCLA is more
expansively defined as "any building, structure, installation, equipment, pipe or pipeline . . . well,
pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock,
or aircraft, or . . . any site or area where a hazardous substance has . . . come to be located." 
42 U.S.C. § 9601(9).